UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| WC 1ST AND TRINITY LP | § | Case No. 20-10885 |
| | § | |
| WC 3RD AND CONGRESS LP | § | Case No. 20-10887 |
| | § | |
| WC 1ST AND TRINITY GP LLC | § | Case No. 20-10886 |
| | § | |
| WC 3RD AND CONGRESS GP LLC | § | Case No. 20-10888 |
| Debtors | § | |

## MOTION TO DISMISS BANKRUPTCY CASES

TO THE HONORABLE TONY M. DAVIS
UNITED STATES BANKRUPTCY JUDGE:

The Roy F. & Joann Cole Mitte Foundation ("Mitte"), a party in interest in these cases, files this Motion To Dismiss Bankruptcy Cases of WC 1st and Trinity, LP, WC 3rd and Congress, LP, (collectively the "Partnerships"), WC 1st and Trinity GP, LLC, and WC 3rd and Congress GP, LLC (collectively the "General Partners"), [1] and would show the Court as follows:

### JURISDICTION AND VENUE

1. This Court has jurisdiction to consider this Motion under 28 U.S.C. § 1334. This is a core proceeding under 28 U.S.C. § 157(b). Venue of these cases and this Motion in this District is proper under 28 U.S.C. §§ 1408 and 1409.

2. The legal predicates for the relief requested herein are Bankruptcy Code sections 105(a), 305(a) and 1112(b).

---

[1] Case No. 20-10885, WC 1st and Trinity, LP, EIN 45-5614986; Case No. 20-10886, WC 1st and Trinity GP, LLC, EIN 45-5625416; Case No. 20-10887, WC 3rd and Congress, LP, EIN 80-0880413; and Case No. 20-10888, WC 3rd and Congress GP, LLC, EIN 46-1665530.

## BACKGROUND

3.     On August 5, 2020 (the "Petition Date"), WC 1st and Trinity, LP, WC 3rd and Congress, LP, WC 1st and Trinity GP, LLC, and WC 3rd and Congress GP, LLC (collectively the "Debtors") filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code moments before a state court deposition was to begin. All four of these World Class entities are controlled by Mr. Natin Paul, and all four Debtors are involved in state court litigation and arbitration with Mitte.

## JOINDER IN RECEIVER'S MOTION

4.     On August 7, 2020, Gregory Milligan, the state court-appointed receiver for two of the debtors, filed a Motion to Dismiss Bankruptcy Cases, Or, In the Alternative, Motion for Declaration That Receiver May Remain in Charge of the Debtors in Possession (Receiver's Mot.) in these cases. Mitte joins and adopts that motion and the relief requested therein. Mitte will not repeat those arguments but will only supplement them with additional facts and authorities. Mitte also requests abstention in the alternative.

## FACTUAL BACKGROUND

5.     Mitte hereby adopts Section III. FACTUAL BACKGROUND, contained in Receiver's Mot. Additionally, Mitte would show the Court the following:

6.     Mitte is a charitable organization organized under Texas law. Mitte is a minority owner via limited partner interests in the Partnerships. Mitte's ownership interest in WC 1st and Trinity, LP is 15.84 % even though Mitte put in almost a third of the capital.[2]

---

[2] Nate Paul's "carry" was approximately 50% meaning his Class B entities own half of the partnership without putting in any capital, and they are not subject to capital calls.

- 2 -

**Error! Unknown document property name.**

7. Mitte is also a minority owner via limited partner interests in WC 3rd and Congress LP. Mitte's original ownership interest was 11.65%, but it was diluted by the general partner twice after capital calls in 2016 and 2018 in which Mitte did not participate. Mitte's current ownership interest is 6.83 %.[3] The capital calls and subsequent dilutions are the subject of controversy in the arbitration and litigation pending between Mitte and the debtors, as set forth below.

8. Mitte was solicited by Nate Paul to invest in these two limited partnerships as well as several others in the 2010-2012 timeframe. A controversy arose in 2018 when Mr. Paul attempted to deceive Mitte regarding the value of its interest in another partnership known as Burnet Road. Mr. Paul and his sister, Sheena Paul, first claimed that Burnet Road was being foreclosed on, which was false. They then notified Mitte that the partnership property had been sold and quoted Mitte a payout number for its interest. Mitte then discovered that the purported "sale" was to a wholly-owned affiliate of Nate Paul's, and the sales price was far below market. After threatening litigation, Mitte received a higher amount for its interest in Burnet Road, but only after being required to sign a confidentiality agreement which prevented Mitte from disclosing its buyout price to Mr. Paul's other limited partners in the Burnet Road partnership.

9. The relationship between Mitte and the World Class empire further deteriorated when Mr. Paul stopped sending quarterly financial reports in late 2018 on Mitte's two remaining World Class investments—the Partnerships who are the subject of Mitte's motions to dismiss.

10. After requesting financial records from Debtors for several months to no avail, in December 2018 Mitte filed a lawsuit in state district court seeking its statutory right to the books and records of the Partnerships. Cause No. D-1-GN-18-007636; *The Roy F. & Joann Cole Mitte*

---

[3] The second dilution took Mitte's interest down to 5.08% but it was increased back to 6.83% as a penalty for World Class defaulting on a $10.5 million settlement as described below.

- 3 -

Error! Unknown document property name.

*Foundation v. WC 1st and Trinity, LP, WC 1st and Trinity GP, LLC, WC 3rd and Congress, LP and WC 3rd and Congress GP, LLC*; In the 126th Judicial District Court of Travis County, Texas.

11. In January 2019, Debtors instituted an arbitration against Mitte relying on an arbitration clause in the World Class-drafted partnership agreements. The parties selected retired state judge Suzanne Covington to be the arbitrator.

12. Debtors were non-compliant with multiple discovery orders of the arbitrator and were sanctioned twice for, among other things, failing to produce financial documents and failing to produce witnesses for deposition.

13. In July 2019, on the eve of the deposition of Barbie Lee, Vice President of Accounting for the World Class entities, the parties agreed to settle all claims in the arbitration and lawsuit. Debtors agreed to buy out Mitte's interests in the partnerships for $10.5 million dollars. The settlement would also include mutual releases.

14. Payment of the settlement amount was due on August 20, 2019. On August 16, World Class headquarters and Nate Paul's home were raided by the FBI in conjunction with a criminal investigation. Debtors defaulted on the settlement, and Mitte declared it null and void.

15. After the FBI raid and the settlement default, and in light of other indicia of financial trouble, Mitte sought appointment of a receiver in the arbitration, and when that appointment was challenged by Debtors on procedural grounds, in the lawsuit. Debtors appealed both appointments but were unable to post a supersedeas for the state court receivership which is currently in full effect.

16. In the meantime, Mitte continued its quest for accurate and complete financial records of the partnerships from Debtors. The receiver, Greg Milligan, also had a great deal of difficulty in obtaining records and cooperation, to say the least.

**Error! Unknown document property name.**

17. During a period when the receiver was not stayed, he obtained banking records for the partnerships that had never been produced by Debtors. These records revealed that approximately $2.4 million was removed from WC 1st and Trinity, LP in December 2015 and January 2016 under suspicious circumstances and without explanation. This apparent embezzlement by World Class Capital Group (Nate Paul's primary operating company) is the subject of a separate state court lawsuit by the receiver as well as claims by Mitte in the arbitration.

18. On June 25, 2020, the morning of a hearing on Mitte's motion for sanctions and the receiver's motion for sanctions, Debtors finally produced general ledgers for both partnerships.[4] These general ledgers confirmed many of Mitte's worst suspicions. Both of the capital calls for WC 3rd and Congress, LP were fraudulent. The limited partners owned by Nate Paul contributed far less cash than they had claimed at the time, and therefore the purported dilutions of Mitte's interest were not justified. Also, the Texas State Comptroller had emptied the bank accounts of both partnerships shortly before they were turned over to the receiver to satisfy franchise tax debts of other World Class entities. Also, over a million dollars in legal fees of the general partners were being charged to the partnerships even though that was not allowed under the partnership agreements unless and until the general partners successfully obtained a favorable non-appealable judgment, and no such judgment has been entered or is likely to be entered.

19. As described in the Receiver's Mot., the World Class entities did everything possible to resist the deposition of Barbie Lee, its Vice President of Accounting, but on August 4, 2020 the state court judge ordered her deposition to take place the following morning at 10:30 am where she would have been called upon to answer questions regarding the above-described

---

[4] Earlier versions were produced in the arbitration, but they had been manipulated to hide all cash transactions.

- 5 -

**Error! Unknown document property name.**

<mark>

<mark>
</mark>

irregularities and others. Debtors played their final desperate card and filed Chapter 11 bankruptcies for the Partnerships and the General Partners minutes before the deposition was to begin.

20. There was no reason to file Chapter 11 petitions on the Petition Date other than to avoid the deposition of Ms. Lee and the entry of a sanctions award against Mr. Paul by the state court judge. There was no threat of foreclosure by any creditor of Debtors. Both mortgage loans on the Partnership properties were in default prior to the receivership, but neither lender was preparing to foreclose on the Petition Date. Under the Order Appointing Receiver,[5] foreclosure and similar actions could not occur without seeking relief from the state court.

## GROUNDS FOR DISMISSAL

21. Mitte agrees with and hereby adopts the Receiver's argument and authorities showing that under the state court's Order Appointing Receiver, which is not stayed and is in full effect, only the Receiver has authority to file bankruptcy for the Partnerships. In particular, the Order provides that "The Receiver is granted the sole and exclusive right to file voluntary petitions for relief under Title 11 of the United States Code (the "Bankruptcy Code") for the Partnerships, or any of them." Nate Paul and the General Partners have been divested of all management and control rights over the Partnerships including the authority to file for bankruptcy. The Chapter 11 petitions of the Partnerships were therefore unauthorized under state law and should be dismissed on that ground alone. The determination of who has authority to file on behalf of a partnership is a matter of substantive law beyond the scope of bankruptcy law. 2002 Advisory Committee Note to *Fed. R. Bankr. P. 1004* and cases cited therein; *See. Price v. Gurney*, 324 U.S. 100; 65 S. Ct.

---

[5] See Ex. A to Receiver's Mot.

**Error! Unknown document property name.**

513 (1945) ("[N]owhere is there any indication that Congress bestowed on the bankruptcy court jurisdiction to determine that those who in fact do not have the authority to speak for the corporation as a matter of local law are entitled to be given such authority and therefore should be empowered to file a petition on behalf of the corporation", 324 U.S. 107, 65 S. Ct. 516-517.[6]

22. Mitte also agrees with and adopts the Receiver's argument that the Chapter 11 petitions of all four Debtors were not filed in good faith. The Fifth Circuit has previously discussed non-exclusive recurring hallmarks of lack of good faith in a Chapter 11 filing, including when "[t]he debtor has one asset, such as a tract of undeveloped real property"; "[t]here are generally no employees except for the principals, little or no cash flow, and no available sources of income to sustain a plan of reorganization or to make adequate protection payments . . ."; "the debtor and one creditor may have proceeded to a stand-still in state court litigation, and the debtor has lost or has been required to post a bond which it cannot afford"; and there are "allegations of wrongdoing by the debtor or its principals." *In re Little Creek Dev. Co.*, 779 F.2d 1068, 1073 (5th Cir. 1986). *Little Creek* involved a lift stay proceeding, but numerous cases have cited the *Little Creek* guidelines for determining "bad faith" in determining a motion to dismiss a case filed in bad faith or to abstain. See, e.g., *In re Chemical Research & Licensing Co.*, 1986 Bankr. LEXIS 4974 (1986); *In re Alexandra Tr.*, 526 B.R. 668, 681 (Bankr. N.D. Tex. 2015), and cases involving two party disputes, discussed *infra*.

23. As discussed in the facts section in the Receiver's Mot. and herein, the debtors meet almost every one of these hallmarks. They are both single asset entities with insufficient cash flow

---

[6] The only known asset of each of the two general partner Debtors, WC 1st and Trinity GP, LLC and WC 3rd and Congress GP, LLC, are the one percent ownership of each in one of the limited partner Debtors. The only activity and function of the two general partners is to manage the limited partners. Since that activity is precluded by the receivership order, dismissal and abstention and dismissal of the general partners' cases is appropriate for the same alternative grounds applicable to the limited partnerships, *i.e.*, bad faith and misuse of the bankruptcy process.

- 7 -

**Error! Unknown document property name.**

to sustain operations, Mitte and the Debtors are engaged in contentious state court litigation, Debtors are unable to post a supersedeas bond, and there are a plethora of allegations of wrongdoing against the debtors, many of which have already been established and are included in the Order Appointing Receiver as factual findings.[7]

24. Additionally, while the Partnerships may not have liquidity to pay their debts, they are not insolvent under the Bankruptcy Code, which provides yet another basis to dismiss this proceeding. *See Investors Group, LLC v. Pottorff*, 518 B.R. 380, 384–85 (N.D. Tex. 2014) (finding both solvency and bad faith as relevant reasons to dismiss bankruptcy proceeding). It is undisputed that value of the real property owned by the Partnerships far exceeds their debts. In its petition, WC 1st and Trinity, LP claims assets between $50-100 million and liabilities of only $1-10 million. (WC 1st and Trinity, LP Bank. Pet. at 3-4). WC 3rd and Congress, LP in its petition claims assets between $50-100 million and liabilities of $10-50 million. (WC 3rd and Congress, LP Bank. Pet. at 3-4). Additionally, Debtors have consistently claimed that the Partnerships are solvent in the state court lawsuit. *See* Defendants' Objection To Receiver's Liquidation Plan ("The Limited Partnerships are not insolvent given their assets greatly exceed their debts.") (Attached as Ex. A);

25. In *In re Little Creek Development*, the Fifth Circuit succinctly summarized the legitimate purposes of filing for relief under Title 11:

> Bankruptcy is an equitable remedy whereby a debtor is clothed with the protection of an automatic stay, preventing his creditors from acting against him for a period of time, in order to facilitate rehabilitation or reorganization of his finances and to promote a "fresh start" through the orderly disposition of assets to satisfy his creditors.

---

[7] "[T]he actions of the governing persons of the Partnerships are illegal, oppressive or fraudulent . . . the properties of the Partnerships are being misapplied or wasted." Order Appointing Receiver at 2.

**Error! Unknown document property name.**

*In re Little Creek Development*, 779 F.2d 1071. None of those purposes are served by these filings. As noted, no foreclosure or other threat to the Debtors' properties is present, so the automatic stay against enforcement of prepetition obligations is not needed to serve the best interests of either the creditor or the Debtors. There is no need to rehabilitate the Debtors. There is no need to reorganize the Debtors' debts and no need or prospect of a "fresh start". There is a need for an orderly disposition of assets and distribution of the proceeds, but the receiver was already working to proceed towards an orderly disposition until stopped by the filing of these cases.

26. By the Debtors' own admission, the properties are worth far more than what is owed to creditors. A sale by the receiver is expected to realize sufficient proceeds to pay 100% of the creditors' claims and allow the investors to recover their investments plus a return on their investments. The receiver was already working to accomplish those purposes under the supervision of the state court which appointed him. Debtors have sought to thwart and delay his efforts by every means possible; these Chapter 11 filings are only the latest and most desperate measures.

27. These are the types of filings that the "good faith" requirement is intended to prevent. "Requirement of good faith prevents abuse of the bankruptcy process by debtors whose overriding motive is to delay creditors without benefitting them in any way or to achieve reprehensible purposes . . .The "powerful equitable weapons" of the bankruptcy process are "available only to those debtors and creditors with 'clean hands'." *Little Creek,* 779 F.2d at 1072.

28. Debtors are attempting to use this court to interfere with a two party dispute already extensively litigated in state court. The receiver is a party, but only to effectuate the state court's receivership order in the two party dispute between Mitte and the World Class group. Numerous courts have dismissed bankruptcy cases on grounds that use of the bankruptcy process to interfere

- 9 -

**Error! Unknown document property name.**

with or achieve an advantage in what is essentially a two party dispute is an abuse of the bankruptcy process and violates the good faith requirement set out in *Little Creek*. For example, in *In re Chemical Licensing Co*, 1986 Bankr. LEXIS 4974 (S.D. Tex. 1986), the Fifth Circuit author of *Little Creek*, sitting by designation, relied on *Little Creek* and other authority and ruled that:

> The bankruptcy proceeding was instigated for an improper purpose, being, to forestall litigation on the joint venture agreement in state court. Such a tactical resort to the bankruptcy court may not be done in good faith, and the debtor's filing must therefore be dismissed.

1986 Bankr. LEXIS 4974, 11. The court further noted that "there was and is virtually no impact on third party creditors from this dispute, because there were and are funds on hand to pay virtually all pre-petition debts in full". *Id*. 10. In the instant cases it is undisputed that there is plenty of asset value to pay the pre-petition debts in full after sale or refinancing.

29. Numerous other cases around the country have dismissed cases in which the debtor was attempting to use the bankruptcy process to impede ongoing state court cases or to interfere in disputes that were essentially two party disputes. *See, e.g., Cedar Shore Resort, Inc. v. Mueller (In re Cedar Shore Resort, Inc.)*, 235 F.3d 375 (8th Cir. 2000); *C-TC 9th Ave. Partnership v. Norton Co. (In re C-TC 9th Ave. Partnership)*, 113 F.3d 1304 (2nd Cir. 1997); *In re Ravick Corp.*, 106 B.R. 834, 844 (Bk. N.J. 1989). For an example of a court in this district dismissing a bad faith filing on similar grounds, see *In re First Financial Enterprises, Inc.,* 99 B.R. 751, 756 (Bank. W.D. Tex. 1989) ("filing of this case meets the classic bad faith definition outlined in *Little Creek*" where "the obvious purpose in this case is to use the Chapter 11 filing as a litigation strategy and leverage in order to defeat the Texas regulatory scheme").

30. Courts have also found that an attempt to avoid a pending arbitration can evidence bad faith. *Cf. In re Marino*, 388 B.R. 679, 683 (Bankr. E.D.N.C. 2008) (finding a bankruptcy petition was not filed in good faith when, among other things, it "was timed to preclude []

arbitration"). *In re Woody*, 578 B.R. 739, 743 (Bankr. M.D.N.C. 2017). Under Fifth Circuit law, the Debtors' attempts to avoid pending arbitration will likely be unsuccessful, further demonstrating the absence of good faith in filing the Petition. *See Gandy v. Gandy (in Re Gandy)*, 299 F.3d 489, 495 (5th Cir. 2002) ("[I]t is generally accepted that a bankruptcy court has no discretion to refuse to compel the arbitration of matters not involving "core" bankruptcy proceedings under 28 U.S.C. § 157 (b)"); *accord Elite Precision Fabricators, Inc. v. Gen. Dynamics Land Sys., Inc.*, CV H-14-2086, 2015 WL 9302843, at *7 (S.D. Tex. Dec. 18, 2015).

31. Debtors' petitions should be dismissed for lack of authority and lack of good faith; additionally, dismissal pursuant to Section 305 of the Bankruptcy Code is appropriate. Section 305 provides that:

> (a) The court, after notice and a hearing, may dismiss a case under this title or may suspend all proceedings in a case under this title, at any time if—(1)the interests of creditors and the debtor would be better served by such dismissal or suspension . . ."

Abstention is appropriate when "the filing . . . is a litigation tactic and an attempt to unfairly obtain leverage by the Debtor". *See, e.g., In re First Financial Enterprises, Inc., supra*, at 99 B.R. 755 (holding that both abstention and dismissal were each appropriate); ; *In re Privada, Inc.*, 2008 Bankr. LEXIS 2717 (Bk. W.D. Tex. 2008; 60 Collier Bankr. Cas. 2d (MB) 1422; 50 Bankr. Ct. Dec. 238. Based the facts previously set forth, abstention and dismissal would be in the best interest of the creditors and the Debtors.

**REQUEST FOR RELIEF**

For the reasons set forth, Mitte prays that the Court enter an order dismissing the Chapter 11 cases filed by the Partnerships on grounds that only the Receiver has authority to file bankruptcy petitions. Mitte further prays that the Court dismiss the Chapter 11 cases filed by all Debtors on grounds they were filed in bad faith. Additionally, Mitte requests dismissal under Section 305 of

**Error! Unknown document property name.**

the Bankruptcy Code. Mitte further requests that the Court award such other and further relief to which it may show itself entitled.

        Respectfully Submitted,

By:   */s/William H. Daniel*
      William H. Daniel
      State Bar No. 05362700
      Ray Chester
      State Bar No. 04189065
      McGinnis Lochridge LLP
      600 Congress Avenue, Suite 2100
      Austin, Texas 78701
      (512) 495-6000
      (512) 495-6093 (Fax)
      wdaniel@mcginnislaw.com
      rchester@mcginnislaw.com

ATTORNEYS FOR THE ROY F. & JOANN COLE MITTE FOUNDATION

**Error! Unknown document property name.**

## CERTIFICATE OF SERVICE

      I hereby certify that the foregoing Motion to Dismiss Bankruptcy Cases has been served via email using the Court's ECF system upon the appropriate parties listed for electronic service and/or via first class mail this 11th day of August, 2020.

| | |
|---|---|
| DEBTOR<br>WC 1st and Trinity, LP<br>814 Lavaca St.<br>Austin, TX 78701 | DEBTOR<br>WC 3rd and Congress, LP<br>814 Lavaca St.<br>Austin, TX 78701 |
| DEBTOR<br>WC 1st and Trinity GP, LLC<br>814 Lavaca St.<br>Austin, TX 78701 | DEBTOR<br>WC 3rd and Congress GP, LLC<br>814 Lavaca St.<br>Austin, TX 78701 |
| DEBTOR'S ATTORNEY:<br>Mark H. Ralston<br>13155 Noel Road<br>Suite 700<br>Dallas, TX 75240<br>214-499-5544<br>Fax: 214-499-5501<br>Email: mralston@fjrpllc.com | RECEIVER'S ATTORNEY:<br>Stephen W. Lemmon<br>lemmon@slollp.com<br>Rhonda Mates<br>mates@slollp.com<br>1801 S. MoPac Expressway, Suite 320<br>Austin, Texas 78746<br>(512) 236-9900; (512) 236-9904 (Fax) |
| Internal Revenue Service<br>Centralized Insolvency Office<br>P. O. Box 7346<br>Philadelphia, PA 19101-7346 | City of Austin<br>PO Box 2267<br>Austin, TX 78783-2267 |
| Wittliff Cutter PLLC<br>1209 Nueces Street,<br>Austin, TX 78701 | Travis County Tax Office<br>PO Box 149328<br>Austin, TX 78714-9328 |
| SAN MARCOS EATERY 1, LLC \| NEWK'S<br>3821 Lorna Road, Suite 107<br>Hoover, AL 35244 | King & Spalding LLP<br>500 West 2nd Street, Suite 1800<br>Austin, TX 78701 |
| Alexander Dubose & Jefferson LLP<br>515 Congress Avenue, Suite 2350<br>Austin, TX 78701-3562 | United Heritage Credit Union<br>PO Box 271<br>Fort Worth, TX 76101 |
| Peter Morin | Hance Scarborough, LLP |

- 13 -

**Error! Unknown document property name.**

| | |
|---|---|
| 3512 Pace Bend Road South<br>Spicewood, TX 78669 | 400 W. 15th Street, Suite 950<br>Austin, TX 78701 |
| Texas Commission Environmental Quality<br>PO Box 3089<br>Austin, TX 78711 | Julia Clark & Associates<br>1401 West Avenue, Suite B<br>Austin, TX 78701 |
| Nalle Plastics Family Limited Partnership<br>1801 S. Mopac Expressway, Suite 320<br>Austin, TX 78746 | Harney Partners<br>3800 N. Lamar Blvd., Suite 200<br>Austin, TX 78756 |
| CR IV Industrial, LP<br>1501 South MoPac Expressway<br>Austin, TX 78746 | LAZ Parking Texas, LLC<br>Attn: Brett Loeffler, G.M.<br>106 East 6th Street, Suite 320<br>Austin, TX 78701 |
| 3rd and Congress Super Majority, LLC<br>814 Lavaca Street<br>Austin, TX 78701 | 1st and Trinity Super Majority, LLC<br>814 Lavaca Street<br>Austin, TX 78701 |
| Anil R. Venkatrao<br>4410 Island Cove<br>Austin, TX 78731 | |

*/s/ William H. Daniel*
William H. Daniel

- 14 -

**Error! Unknown document property name.**