**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| In re: | | |
|---|---|---|
| WC 1st and Trinity, LP | | Case No. 20-10885-tmd |
| WC 1st and Trinity GP, LLC | | Case No. 20-10886-tmd |
| WC 3rd and Congress, LP | | Case No. 20-10887-tmd |
| WC 3rd and Congress GP, LLC | | Case No. 20-10888-tmd |

**DEBTORS' RESPONSE IN OPPOSITION TO MOTION**
**FOR EXPEDITED HEARING ON MILLIGAN'S MOTION TO DISMISS**
**BANKRUPTCY CASES/MOTION FOR DECLARATION**

**Synopsis**

1.       Milligan's motion for an expedited hearing on his *Motion to Dismiss Bankruptcy Cases or, in the Alternative, Motion for Declaration that Receiver May Remain in Charge of the Debtors in Possession* (the "**Motion to Dismiss**") should be denied for three reasons. First, Milligan has failed to demonstrate that good cause exists for conducting an expedited hearing on the Motion to Dismiss. To that end, there is no threat of any improper use of the Debtors' real property assets or the rents generated from those assets during the pendency of these bankruptcy cases and certainly no evidence of any immediate harm. Second, fundamental principles of due process and fairness demand that the Debtors and other parties in interest have adequate time to respond to the Motion to Dismiss. Here, the nature of the relief sought is significant. Furthermore, the scope of the facts alleged by and complexity of legal arguments made by Milligan require both significant legal and factual response. As such, the Debtors and other parties in interest deserve at a minimum the standard twenty-one-day response period provided by the Bankruptcy Local Rules. And third, as had been communicated to counsel for Milligan, the Debtors' proposed bankruptcy counsel has a long-standing out-of-state family commitment from August 14 through 22, the

requirements of which will impose serious hardship upon him if hearing on the Motion to Dismiss is expedited as requested by Milligan.

## Discussion

2.      As a gating issue, Milligan must demonstrate that good cause exists for this Court to grant an expedited hearing on the Motion to Dismiss.[1] Milligan has failed articulate any credible cause whatsoever for an expedited hearing, especially one that would occur within the next five days (with a two-day deadline for the Debtors to file a response to the Motion to Dismiss).[2] Nor could Milligan show such "good cause", as there is no reason for the Motion to Dismiss to be heard on an expedited basis. In his motion to expedite, Milligan summarily states that "an immediate need exists to have these management and control issues determined."  But he fails to explain why that need is immediate.[3] To the contrary, any action taken by the Debtors in these cases will be subject to scrutiny and transparency by, among others, this Bankruptcy Court and the Office of the U.S. Trustee, as well as creditors and other parties in interest. To that point, any funds received by the Debtors will be deposited in the Debtors' DIP account, subject to controls imposed by the Bankruptcy Code, and other protections. Milligan's contention, therefore, is specious.

3.      In his Motion to Dismiss, Milligan seeks either to have these bankruptcy cases dismissed or to designate Milligan as the person in charge of the Debtor Partnerships. The Debtors believe that the relief sought by Milligan is not only without merit, but further, if it is granted, will

---

[1] See L. Rule 9014(e).

[2] Milligan contends that hearing on the Motion to Dismiss should take 90 minutes or less. The scope of the Motion to Dismiss itself proves that contention to be absurd.

[3] Milligan complains that the Debtors acted improperly in directing their two tenants to tender post-petition rent payments to the Debtors. Although we respect advocacy in its highest form, as Paul Harvey would say, and now, the rest of the story.  There has been no attempted diversion of funds from the two tenants of the Debtors' property.  To the contrary, the Debtor limited partnerships instructed their tenants to deposit all future rents in the US Trustee authorized Debtor-In-Possession bank accounts, where the funds will remain on deposit pending court order and/or agreement of the secured lenders.

5543470.1  FJR 23063.30

leave the Debtors' secured creditors, priority creditors, unsecured creditors, the Debtors themselves, and their equity security holders unable to reorganize the Debtors and to cure the Debtors' defaulted loan obligations due to a never-ending series of litigation proceedings, with the costs of the defaulted loan obligations and the costs of Milligan's receivership resulting in the significant erosion in value of the Debtors' equity and their estates. Furthermore, the Debtors believe that they can propose a plan that is fair and equitable to all parties and intend to file a plan disclosure statement within thirty (30) days. To that end, the Debtors' refute that they filed these bankruptcy cases in bad faith.

4.      But regardless of the merits of the parties' respective positions on the facts alleged and issues argued in the Motion to Dismiss, there is no reason why the Motion to Dismiss should be heard on an expedited basis. Milligan speculates that the Debtors filed these bankruptcy cases to avoid disclosure of their financial dealings. But there is no more transparent a forum than the Bankruptcy Court. Nondisclosure is certainly not the Debtors' motivation. Rather, they seek the opportunity to successfully reorganize=. Furthermore, the Debtors real property assets will not be put at risk or diminished in value if the Debtors and other parties in interest are permitted the amount of time usually permitted by the Bankruptcy Local Rules to respond to the Motion to Dismiss. In that regard, and in an effort to address any concern by Milligan, the Debtors proposed an interim agreement that would ensure Debtors' assets are safeguarded pending a hearing on the Motion to Dismiss, without prejudice to any of the parties. Milligan, without comment, summarily rejected that proposal.[4]

5.      The Nalle Plastics Family Limited Partnership ("**NPFLP**") is the principal secured creditor of Debtor WC 3rd and Congress, LP.; United Heritage Credit Union ("**UHCU**") is the

---

[4] See email communications between counsel for Milligan and the Debtors attached hereto as Ex. "A".

principal secured creditor of Debtor WC 1st and Trinity, LP. NPFLP has, in writing, stated that it opposes the Motion to Dismiss and that it is in favor of the Debtors remaining as Debtors in Possession. Furthermore, on the grounds that they need sufficient time to properly present their opposition, NPFLP also opposes expedited consideration of the Receiver's motion.[5] UHCU, for its part, has communicated that had not even received the Receiver's motion and request for expedited hearing. Needless to say, it is clear that the secured creditors and other parties in interest to this litigation need the time afforded by the Local Rules to be able to appropriately respond to the Motions to Dismiss, which cannot be accomplished in the short time frame requested for an expedited hearing.

6. The nature of this contested matter and fundamental principles of due process warrant that the Debtors and other parties in interest be permitted sufficient time to respond to Milligan's allegations (which the Debtors refute as specious, false and incomplete) and legal arguments (which the Debtors contend are not meritorious).[6] Additionally, the nature of this matter is likely to require the presentation of witnesses and numerous documentary exhibits (including and in addition to the fourteen exhibits attached to the Motion to Dismiss). In short, this contested matter is not a simple matter. The Debtors and other parties in interest should have adequate time to prepare and present their defense, evidence, and witnesses as may be necessary, to the Motion to Dismiss.

---

[5] See Email from Kenneth Richey, counsel for NPFLP, attached hereto as Ex. "B".

[6] Milligan's Motion to Dismiss is rife with specious false and incomplete information. The Debtors will respond more fully prior to a hearing on the Motion to Dismiss but offer to the Court additional background, described (at least in part) in the *Super Majority Limited Partners' Original Petition*, a true and correct copy of which (without exhibits) is attached hereto as Exhibit "C". In that Original Petition, the plaintiffs (the super-majority limited partners of the two Debtor limited partners) detail the facts evidencing Milligan's collusion with the Debtor limited partners' minority limited partner to hijack control of the Debtor limited partners and thereby squeeze-out the Debtor general partners and the super-majority limited partners, including but not limited to the Defendant parties in that action intentionally including enforceable provisions in the state court receivership order.

5543470.1 FJR 23063.30

7.     Finally, Debtors' proposed counsel ("**Ralston**") has a long-standing out-of-state family commitment from August 14 through 22, the requirements of which will impose serious hardship upon him if hearing on the Motion to Dismiss is expedited as requested by Milligan. Ralston communicated that commitment to Milligan's counsel on Monday, August 10, at approximately 9:00 a.m. (which notably, was the first business hour after Milligan's attempted conference on an expedited hearing). Regardless of that communication, Milligan's counsel proceeded to request a hearing date on the Motion to Dismiss for a date that would include the time period during which Ralston will be traveling or assisting his son to move into his college dormitory for the start of that son's freshman year at the University of Arizona.[7]

Accordingly, for the foregoing reasons, the Debtors request that Milligan's motion for expedited hearing on his Motion to Dismiss be denied, and that the Motion to Dismiss be set on a date at the Court's convenience after the expiration of the notice period required by the Local Rules.

Dated: August 11, 2020

Respectfully submitted,

 /s/ *Mark H. Ralston*
Mark H. Ralston
State Bar No. 16489460
Fishman Jackson Ronquillo PLLC
13155 Noel Road, Suite 700
Dallas, TX 75240
Telephone: (972) 419-5544
Facsimile: (972) 419-5501
E-mail: mralston@fjrpllc.com

**PROPOSED COUNSEL FOR THE DEBTORS**

---

[7] *See* Email from Ralston to Stephen Lemmon dated August 10, 2020, a true and correct copy of which is attached hereto as Ex. "D".

## **CERTIFICATE OF SERVICE**

I hereby certify that on August 11,  2020, I caused to be served a true and correct copy of the foregoing document by the court ECF filing system on all parties who have entered their appearance electronically.

 /s/ *Mark Ralston*
Mark Ralston

## Mark Ralston

| | |
|---|---|
| **From:** | Stephen Lemmon <Lemmon@slollp.com> |
| **Sent:** | Monday, August 10, 2020 5:32 PM |
| **To:** | Mark Ralston; 'Chester, Ray' |
| **Cc:** | Rhonda Mates; Daniel, William H.; Bynum, Deborah A.  (USTP) |
| **Subject:** | RE: WC 1st & Trinity LP et al [IWOV-Legal.FID105226] |

Thanks Mark.  Your proposal is unacceptable and we will move to have this heard on an expedited basis.  By the way, you have not responded to our request for the corporate authorizations and retention agreements.  Thanks.

**Stephen Lemmon**

**STREUSAND | LANDON | OZBURN | LEMMON LLP**
Spyglass Point | 1801 South MoPac Expressway | Suite 320 | Austin, Texas 78746
(d) (512) 220-2688 | (o) (512) 236-9900 | (f) (512) 236-9904
lemmon@slollp.com | www.slollp.com

This electronic message contains information from the law firm of Streusand, Landon, Ozburn & Lemmon, LLP.  The contents may be privileged and confidential and are intended for the use of the intended addressee(s) only.  If you are not an intended addressee, note that any disclosure, copying, distribution, or use of the contents of this message is prohibited.  If you received this e-mail in error, please delete it and all copies and contact me at lemmon@slollp.com and/or (512) 220-2688.  Thank you.

**IRS Circular 230 Disclosure:**  To ensure compliance with requirements imposed by the IRS, we inform you that any U.S. Federal tax advice contained in this communication, (including any attachments) is not intended to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing, or recommending to another party any transaction or matter addressed herein.

**From:** Mark Ralston <mralston@fjrpllc.com>
**Sent:** Monday, August 10, 2020 3:07 PM
**To:** Stephen Lemmon <Lemmon@slollp.com>; 'Chester, Ray' <rchester@mcginnislaw.com>
**Cc:** Rhonda Mates <Mates@slollp.com>; Daniel, William H. <WDaniel@mcginnislaw.com>
**Subject:** RE: WC 1st & Trinity LP et al [IWOV-Legal.FID105226]

Stephen (and Ray),

I assume your concern is ensuring that the property of the limited partnerships, namely (i) the unimproved real estate owned by each limited partnership ("Real Property"), (ii) the pre-petition cash held by the Receiver ("Receiver Cash"), and (iii) the post-petition cash that will be deposited into the debtor-in-possession ("DIP Cash"), will not be used by the debtors in possession without court approval, pending a hearing on the Receiver's and the Mitte Foundation's motions to dismiss the case or seeking alternative relief ("Opposition Motions").

In light of that concern, the limited partnership debtors ("LP Debtors") would be amenable to the following agreement, which would be entered into without prejudice to any parties' legal or equitable rights and without any waiver or estoppel of those rights as they existed prior to the entry of this agreement ("Agreement"):

o   Neither the LP Debtors nor the Receiver will take any actions to compel compliance with or seek approval for non-compliance with Section 543 pending the hearing on the Opposition Motions.

o   The movants (the Receiver and Mitte) shall not seek an expedited hearing on their respective Opposition Motions.

o   The Receiver Cash will remain in the Receiver's custody.

o   The DIP Cash will be collected by the LP Debtors and deposited in the appropriate DIP account.

- o Any post-petition expenses will be the responsibility of the LP Debtors, but use of DIP Cash to pay those expenses will only be by agreement of the LP Debtors, the Receiver and the applicable secured lender, or if no agreement can be reached, by order of the Bankruptcy Court.

- o Likewise, pre-petition expenses would be the responsibility of the Receiver, but use of the Receiver Cash to pay those expenses would be by approval of the Bankruptcy Court (which would be required in any case for the payment of any pre-petition debt).

- o For the avoidance of doubt, the LP Debtors will not sell or refinance the Real Property without prior approval of the Bankruptcy Court, which would be required in any event.

- o For the avoidance of doubt, insurance on the Properties remains in full force and effect.

- o The Agreement will terminate upon final hearing on the Opposition Motions.


If the terms are acceptable, then I think we would need to run this proposal by the secured lenders and Deborah Bynum to obtain their consent, and then file a motion for approval of same by the Bankruptcy Court.

I believe the above addresses any concerns regarding the period between now and a hearing and determination of the Opposition Motions. Please advise if you are in agreement or have any comments to this proposal.

All the best,

**Mark H. Ralston** | Attorney
FISHMAN | JACKSON | RONQUILLO PLLC
13155 Noel Road, Suite 700 | Dallas, Texas 75240
Direct Dial: 972.419.5544 |  Fax: 972.419.5501
Email: mralston@fjrpllc.com



CONFIDENTIALITY NOTICE:  This e-mail and any attachments are for the exclusive and confidential use of the intended recipient.  If you are not the intended recipient, please do not read, distribute, or take action in reliance upon this message.  If you have received this in error, please notify us immediately by return e-mail and promptly delete this message and its attachments from your computer system.  We do not waive client-attorney or work product privilege by the transmission of this message.

---

**From:** Stephen Lemmon <Lemmon@slollp.com>
**Sent:** Monday, August 10, 2020 9:41 AM
**To:** Mark Ralston <mralston@fjrpllc.com>; 'Chester, Ray' <rchester@mcginnislaw.com>
**Cc:** Rhonda Mates <Mates@slollp.com>; Daniel, William H. <WDaniel@mcginnislaw.com>
**Subject:** RE: WC 1st & Trinity LP et al [IWOV-Legal.FID105226]

So do you agree that the Receiver can continue to hold property pending a final hearing?

Stephen Lemmon

STREUSAND | LANDON | OZBURN | LEMMON LLP
Spyglass Point | 1801 South MoPac Expressway | Suite 320 | Austin, Texas 78746
(d) (512) 220-2688 | (o) (512) 236-9900 | (f) (512) 236-9904
lemmon@slollp.com | www.slollp.com

This electronic message contains information from the law firm of Streusand, Landon, Ozburn & Lemmon, LLP.  The contents may be privileged and confidential and are intended for the use of the intended addressee(s) only.  If you are not an intended addressee, note that any disclosure, copying, distribution,

or use of the contents of this message is prohibited.  If you received this e-mail in error, please delete it and all copies and contact me at lemmon@slollp.com and/or (512) 220-2688.  Thank you.

**IRS Circular 230 Disclosure**:  To ensure compliance with requirements imposed by the IRS, we inform you that any U.S. Federal tax advice contained in this communication, (including any attachments) is not intended to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing, or recommending to another party any transaction or matter addressed herein.

---

**From:** Mark Ralston <mralston@fjrpllc.com>
**Sent:** Monday, August 10, 2020 9:38 AM
**To:** 'Chester, Ray' <rchester@mcginnislaw.com>
**Cc:** Stephen Lemmon <Lemmon@slollp.com>; Rhonda Mates <Mates@slollp.com>; Daniel, William H. <WDaniel@mcginnislaw.com>
**Subject:** RE: WC 1st & Trinity LP et al [IWOV-Legal.FID105226]

Ray,

That is correct. For the same reasons as stated in my email to Stephen.

Best,


**Mark H. Ralston** | Attorney
FISHMAN | JACKSON | RONQUILLO PLLC
13155 Noel Road, Suite 700 | Dallas, Texas 75240
Direct Dial: 972.419.5544 |  Fax: 972.419.5501
Email: mralston@fjrpllc.com



CONFIDENTIALITY NOTICE:  This e-mail and any attachments are for the exclusive and confidential use of the intended recipient.  If you are not the intended recipient, please do not read, distribute, or take action in reliance upon this message.  If you have received this in error, please notify us immediately by return e-mail and promptly delete this message and its attachments from your computer system.  We do not waive client-attorney or work product privilege by the transmission of this message.

---

**From:** Chester, Ray <rchester@mcginnislaw.com>
**Sent:** Monday, August 10, 2020 9:04 AM
**To:** Mark Ralston <mralston@fjrpllc.com>
**Cc:** Stephen Lemmon <Lemmon@slollp.com>; Rhonda Mates <Mates@slollp.com>; Daniel, William H. <WDaniel@mcginnislaw.com>
**Subject:** WC 1st & Trinity LP et al

Mark,

As you know, Bill Daniel and I represent the Mitte Foundation. We have entered appearances in the 4 bankruptcy cases you filed last Thursday. We are filing a motion to dismiss all 4 cases this morning. It is similar to the receiver's motion. Is it safe to assume you do not agree to an expedited hearing of our motion as well?

Thanks.

Ray

*Ray Chester*
Board Certified Civil Trial Law and Personal Injury Trial Law
**McGINNIS LOCHRIDGE**
600 Congress Avenue, Suite 2100
Austin, TX 78701
o 512-495-6051 f 512-505-6351



**NOTICE:** This email contains information that is confidential, proprietary, privileged, or otherwise legally protected from disclosure. If you are not the named addressee, you are not authorized to read, print, retain, copy, or disseminate this email or any part of it. If you received this email in error, please immediately notify the sender by reply email, and delete all copies of this email and any attachments.

**Mark Ralston**

| | |
|---|---|
| **From:** | Ken Richey <kenrichey@gmail.com> |
| **Sent:** | Tuesday, August 11, 2020 6:37 AM |
| **To:** | Mark Ralston |
| **Subject:** | 20−10887 and 20-10888 |

Mark,

Thank you for giving me your contact information.

As you know, I represent Alan Nalle and the Nalle Plastics Family Limited Partnership.

I have received and reviewed a copy of Gregory S. Milligan's Motion to Dismiss the bankruptcy of the LP and General Partner described in the bankruptcy filings in Case Numbers 20−10887 and 20-10888, respectively. We oppose the Motion titled: MOTION TO DISMISS BANKRUPTCY CASES, OR, IN THE ALTERNATIVE, MOTION FOR DECLARATION THAT RECEIVER MAY REMAIN IN CHARGE OF THE DEBTORS IN POSSESSION.

I understand that Mr. Milligan, who was the state court receiver, has asked to set this motion on an expedited basis. I want you to know that as the secured creditor, mortgage lender, and entity that has the most interest in the property securing our mortgage loan to the WC 3rd & Congress LP, we do not want an expedited hearing. We need the time to consider who will represent the Nalle Plastics Family Limited Partnership and when and how to proceed. Gregory S. Milligan, after one phone call from his counsel in November 2019 to Mr. Nalle, has never contacted or successfully attempted to contact Mr. Nalle or myself or anyone else connected with the Nalle Plastics Family Limited Partnership.

If you have any questions, please feel free to contact us.

Thank you,

Kenneth A. Richey, Sr.                             EXHIBIT B
Attorney at Law

1

Richey & Paver, P.C.
1910 Justin Lane
Austin , Texas 78757
Tel: 512.336.2863
Fax: 512.335.6029
E-mail: kenrichey@gmail.com

The information contained in this e-mail message is intended only for the personal and confidential use of the recipient(s) named above. This message may be an attorney-client communication and/or work product and as such is privileged and confidential. If the reader of this message is not the intended recipient or an agent responsible for delivering it to the intended recipient, you are hereby notified that you have received this document in error and that any review, dissemination, distribution, or copying of this message is strictly prohibited. If you have received this communication in error, please notify us immediately by e-mail, and delete the original message.

7/8/2020 10:14 PM
**Velva L. Price
District Clerk
Travis County
D-1-GN-20-003550
Ruben Tamez**

CAUSE NO. ___D-1-GN-20-003550___

| | | |
|---|---|---|
| 1st and Trinity Super Majority, LLC and 3rd and Congress Super Majority, LLC, | §<br>§<br>§ | IN THE DISTRICT COURT |
| *Plaintiffs*, | §<br>§ | |
| v. | §<br>§ | OF TRAVIS COUNTY, TEXAS |
| Gregory S. Milligan, in his Individual Capacity and as Receiver for WC 1st and Trinity, LP and WC 3rd and Congress, LP; the Roy F. & JoAnn Cole Mitte Foundation; Stephen Wayne Lemmon, and Ray Charles Chester, | §<br>§<br>§<br>§<br>§<br>§<br>§ | 250TH ___ JUDICIAL DISTRICT |
| *Defendants*. | § | |

## SUPER MAJORITY LIMITED PARTNERS' ORIGINAL PETITION

Plaintiffs 1st and Trinity Super Majority, LLC ("Trinity Super Majority"), the super majority owner of approximately 84% of all outstanding partnership interests in WC 1st and Trinity, LP and 3rd and Congress Super Majority, LLC ("Congress Super Majority"), the super majority owner of approximately 92% of all outstanding partnership interests in WC 3rd and Congress, LP (collectively, the "Super Majority","Super Majority Limited Partners", or "Super Majority Partners") file this Original Petition against (1) Defendant Gregory S. Milligan, in both his capacity as putative receiver for WC 1st and Trinity, LP and WC 3rd and Congress, LP and in his individual capacity ("Milligan"); (2) the Roy F. & JoAnn Cole Mitte Foundation (the "Mitte Foundation" or "Mitte"); (3) Stephen Wayne Lemmon, as agent of Milligan, in his capacity as putative receiver for WC 1st and Trinity, LP and WC 3rd and Congress, LP and in his individual capacity ("Lemmon"); and (4) Ray Charles Chester, in his capacity as agent for Mitte and in his

1

EXHIBIT C

individual capacity ("Chester") (collectively, "Defendants").

## DISCOVERY-CONTROL PLAN

1.      The Super Majority Limited Partners intend to conduct discovery under Level 2 of Texas Rule of Civil Procedure Section 190.3.

## CLAIM FOR RELIEF

2.      The Super Majority Limited Partners seek monetary relief of more than $100,000.00, as well as declaratory and other nonmonetary relief.

## PARTIES

3.      Plaintiff 1st and Trinity Super Majority, LLC is a Delaware limited liability corporation, with its principal place of business at 814 Lavaca Street, Austin, Texas, and its registered agent is Cogency Global Inc., 1601 Elm Street, Suite 4360, Dallas, Texas 75201.

4.      Plaintiff 3rd and Congress Super Majority, LLC is a Delaware limited liability corporation, with its principal place of business at 814 Lavaca Street, Austin, Texas, and its registered agent is Cogency Global Inc., 1601 Elm Street, Suite 4360, Dallas, Texas 75201.

5.      Defendant Gregor S. Milligan, in his capacity as putative receiver for both WC 1st and Trinity, LP and 3rd and Congress, LP, is an individual and is a resident of Travis County, Texas, and may be served with process at his place of business, 401 Congress Avenue, Suite 1540, Austin, Texas 78701, or at his residence, 1901 Holiday Hills, Austin, Texas 78732.

6.      Defendant Mitte Foundation is registered as a Texas non-profit corporation, with its principal office in Travis County, Texas, and may be served through its registered agent Carolyn Molst at 1008 West Avenue, Austin, Texas 78701.

7.      Defendant Lemmon who represents Milligan, in his capacity as putative receiver for WC 1st and Trinity, LP and WC 3rd and Congress, LP, and is an individual and is a resident of

Unofficial copy Travis Co. District Clerk Valva L. Price

Travis County, Texas, and may be served with process at his principal place of business, Streusand, Landon, Ozburn & Lemmon, LLP, Spyglass Point, 1801 S. MoPac Expressway, Suite 320, Austin, TX 78746 or at his residence, 4401 Shoal Creek Blvd., Austin, Texas 78756.

8.      Defendant Chester, who represents Mitte, and is an individual and is a resident of Travis County, Texas, and may be served with process at his principal place of business, McGinnis Lochridge, 600 Congress Ave., Ste. 2100, Austin, Texas 78701 or at his residence, 4408 Long Champ Drive #31, Austin, Texas 78746.

## VENUE

9.      Venue is proper in Travis County, Texas under Texas Civil Practice and Remedies Code Section 15.002(a)(1) because all or a substantial part of the acts or omissions giving rise to the Super Majority's claims occurred in Travis County, Texas.

## FACTS

### A.      The Trinity Limited Partnership.

10.      WC 1st and Trinity, LP (the "Trinity Limited Partnership") is an investment entity organized "[t]o acquire, own, hold, sell, assign, transfer, operate, lease, mortgage, pledge and otherwise deal with [] certain parcel[s] of real property."[1]  The Trinity Limited Partnership and the partners thereto are bound by the Agreement of Limited Partnership of WC 1st and Trinity, LP that became effective on July 2, 2012 (the "Trinity Partnership Agreement"), setting forth the rights and obligations of all partners. The  Trinity Super Majority currently holds approximately 84% of the Trinity Limited Partnership; whereas, the Mitte Foundation currently holds only a 15.84% minority limited partnership interest. The real property owned by the Trinity Limited Partnership

---

[1] *See* Trinity Partnership Agreement § 1.3(a)(i).

3

consists of approximately 40,934 square feet of land located at 401 E. Cesar Chavez Street in downtown Austin.  Since the inception of this partnership and the purchase of this real property, the value of the real property has appreciated significantly, and the value of the partnership's assets currently significantly exceeds its debts.

11.     The rights and responsibilities of the partners in the Trinity Limited Partnership are described and identified in the Trinity Partnership Agreement.  WC 1st and Trinity, GP, LLC ("Trinity General Partner"), an entity created specifically to serve as general partner, is identified in the Trinity Partnership Agreement as the General Partner of the Trinity Limited Partnership, holding a 1% general partner ownership interest. By the express terms of the Trinity Partnership Agreement, only the Trinity General Partner may direct the business and affairs of the Trinity Limited Partnership.  As clearly articulated in Section 6.1 of the Trinity Partnership Agreement, minority limited partners—such as the Mitte Foundation—have no authority to take part in the management or control of the partnership or its business and affairs, or to act for or to bind the partnership in any way.  As detailed herein, the Mitte Foundation is a repeat offender, having breached these obligations with abandon, in collusion with the other named defendants and with their knowledge, approval, and active assistance.

**B.     The Congress Limited Partnership.**

12.     WC 3rd and Congress, LP (the "Congress Limited Partnership"[2]) is a separate investment entity organized "[t]o acquire, own, hold, sell, assign, transfer, operate, lease,

---

[2] The Trinity Limited Partnership and the Congress Limited Partnership are collectively referred to as the "Limited Partnerships."

mortgage, pledge and otherwise deal with [] certain parcel[s] of real property."[3] The Congress Limited Partnership and the partners thereto are bound by the Agreement of Limited Partnership of WC 3rd and Congress, LP that became effective on December 28, 2012, (the "Congress Partnership Agreement"[4]), which sets forth the rights and obligations of all partners. The Congress Super Majority currently holds approximately 92% of the Congress Limited Partnership, whereas the Mitte Foundation owns only a 6.83% minority limited partnership interest. The real property owned by the Congress Limited Partnership consists of a 1.24-acre parcel of land made up of three contiguous tracts, located at 201 Colorado Street, 203 Colorado Street, and the intersection of 3rd Street and Congress Avenue in downtown Austin.  As in the case with the Trinity Limited Partnership, since the inception of the Congress Limited Partnership and its purchase of this real property, the value of the real property has appreciated significantly, and the value of the partnership's assets currently significantly exceeds its debts.

13.     The rights and responsibilities of the partners in the Congress Limited Partnership are set forth in the Congress Partnership Agreement.  WC 3rd and Congress, GP, LLC (the "Congress General Partner"), an entity created specifically to serve as general partner, is identified in the Congress Partnership Agreement as the General Partner of the Congress Limited Partnership, holding a 1% general partner ownership interest. By the express terms of the Congress Partnership Agreement, only the General Partner may direct the business and affairs of the Congress Limited Partnership.  Further, it is clearly articulated in Section 6.1 that minority limited

---

[3] See Congress Partnership Agreement § 1.3(a)(i).

[4] The Congress Partnership Agreement and the Trinity Partnership Agreement are referred to collectively herein as the "Partnership Agreements."

partners—such as the Mitte Foundation—have no authority to take part in the management or control of the partnership or its business and affairs, or to act for or to bind the partnership in any way.  Again, as detailed herein, the Mitte Foundation is a repeat offender, having breached these contractual obligations with abandon, in collusion with the other named defendants and with their knowledge, approval, and active assistance.

C. **The Mitte Foundation's small minority ownership interests do not entitle it to make any material decisions on behalf of the Limited Partnerships.**

14. Not only is Mitte expressly prohibited from taking part in the management or control of the Limited Partnerships, or their business and affairs, its small minority ownership interests do not come anywhere close to the pertinent consent thresholds needed to make material decisions, including but not limited to directing the sale of assets under Section 5.3(b) or liquidation of the partnership under Section 13.1 of the Partnership Agreements. Such material decisions require either the approval of a super majority (75%) or a simple majority (50%) ownership, which the Mitte Foundation does not have—holding minority limited partnership interests of 6.83% and 15.84% in the respective Limited Partnerships. Thus, all material decisions require the participation of the respective Super Majority. At no time since the inception of the investments has the Mitte Foundation ever held ownership interests sufficient to achieve a majority or super majority in either of the Limited Partnerships, and the limitations on the Mitte Foundation's minority positions and attendant rights were known to it and were acknowledged by it at the time the Mitte Foundation made the investments upon review by its counsel.

D. **A dispute arises due to the Mitte Foundation's and its agent's inappropriate interference in the management and affairs of the Limited Partnerships.**

15. In 2018, the Limited Partnerships and the Mitte Foundation were engaged in a dispute relating to agents of the Mitte Foundation interfering with the management and affairs of

6

the Limited Partnerships, including but not limited to sharing confidential partnership information with third parties  in breach of the Partnership Agreements, and the Mitte Foundation representing to third parties that it was a controlling partner with authority to solicit offers from third parties to purchase the Limited Partnerships' assets.   In the course of this dispute, the Mitte Foundation requested access to the Limited Partnerships' books and records. The Limited Partnerships, however, were troubled about the ramifications of releasing confidential information to the Mitte Foundation, as a suspected disclosure by Mitte to a third party had formed the crux of the initial dispute.   The Limited Partnerships advised Mitte that they would produce the requested information, but the production would have to be protected under a non-disclosure and confidentiality agreement.  Incensed at the notion of being asked to uphold their obligation to keep the information of the Limited Partnerships confidential, on December 27, 2018, Mitte brought suit in Travis County District Court, seeking injunctive relief.  The Lawsuit was assigned Case No. D-1-GN-18-007636, (the "Mitte Foundation Lawsuit" or the "Document Production Lawsuit").

16.     In February 2019, the Limited Partnerships and General Partners initiated arbitration proceedings under the Partnership Agreements against Mitte for its multiple and continued breaches of the Partnership Agreements, seeking to end the toxic relationship with Mitte, which had proven itself to be a rogue limited partner.  The matter was assigned Arbitration Case No. 01-19-000-5347 (the "Arbitration Proceeding").   Susan Covington ("Covington" or the "Arbitrator") was chosen to serve as arbitrator.

**E.**  **The Mitte Foundation seeks the appointment of a receiver for the Limited Partnerships and proffers their own conditioned agent as a "neutral" and disinterested party.**

17.  In the course of the Arbitration Proceeding, Mitte sought the appointment of a receiver over the Limited Partnerships.  At an October 4, 2019 hearing in the Arbitration Proceeding, Mitte put forward Milligan as a "neutral," outside, and disinterested party who would serve well as a receiver.[5] There was no disclosure whatsoever at the hearing of any prior relationship between Milligan and his agents and Mitte and its agents.

18.  As further detailed below, the Super Majority later discovered, however, that Mitte's relationship with Milligan dates back to as early as August 20, 2019, when the Mitte Foundation had started providing Milligan documents that were subject to a district court protective order and that were therefore not to be shared unless (a) the receiving party was a consultant or professional engaged by Plaintiff or Plaintiff's counsel, who (b) signed a non-disclosure agreement subjecting such person to the jurisdiction of the Court for enforcement of the agreement. Exhibit 1.  In other words, well before Milligan was proffered by Mitte as a "neutral" and disinterested party, he was being provided confidential information concerning the Limited Partnerships or belonging to the Limited Partnerships in violation of a district court protective order.

19.  Further, Mitte disingenuously proffered Milligan as a "neutral," when in reality he had been conferring and conspiring with the Mitte Foundation about how they could use him to effectuate a sale of the Limited Partnerships assets, attempting to achieve a result unavailable to

---

[5] Later, at a December 5, 2019, hearing in the Document Production Lawsuit, the Mitte Foundation would again disingenuously tender Milligan as a "neutral," outside and disinterested party.  As he would repeatedly show by his actions and inactions, he was none of these.

them under the Partnership Agreements, well before the hearings on the appointment of a receiver. Mitte hand-selected Milligan in order to have a partisan bagman to achieve for Mitte what it could not do under the Partnership Agreements, *i.e.*, to commandeer the management and affairs of the Partnerships and to sell the assets. Milligan and his counsel complied, undoubtedly in anticipation of a hefty pay day.

20.     It has thus become apparent in the past several months that either (a) Milligan had been working as a consultant to the Mitte Foundation before Mitte tendered him as a proposed receiver (and if that were the case, this conflict was not disclosed to the Arbitrator or to any other party); or (b) Milligan had obtained or had been provided with confidential information in direct violation of a court order. Neither is lawful.

21.     Without the benefit of this and other background information showing that Milligan was by no means "neutral," or disinterested, and without knowing he had been selected by Mitte to attempt to force a sale under the guise of neutrality—a result Mitte could not otherwise obtain given its limited rights under the Partnership Agreements, that Arbitrator considered the Mitte Foundation's request for receivership. Acting on incomplete and concealed information, on October 11, 2019, the Arbitrator appointed Milligan to be receiver for the Limited Partnerships (creating the "Arbitration Receivership"), on the basis of an unfounded claim that there was an imminent risk of loss, harm or injury to the assets the Partnerships owned.

**F.     Based on incomplete and withheld information, the Arbitration Receivership is established and the Receiver immediately sets out to undermine the Limited Partnerships for the benefit of the Mitte Foundation and its agents.**

22.     Receivership is one of the "harshest" remedies available in the legal system. Accordingly, the applicable statutes impose exact requirements and protocols. Consistent with these requirements and protocols, on its own terms, the order creating the Arbitration Receivership

facially required strict satisfaction of pre-conditions before it could be considered to be effective, including bond requirements and the filing of the statutorily-required oath by any receiver appointed to undertake such a task.

23. But the evidence has shown that Milligan, by himself or through his counsel Lemmon, began taking active and consequential steps as a putative receiver well before he was appointed (including but not limited to pre-determining at the direction of Mitte that he would make a recommendation to sell the Limited Partnership assets once appointed as receiver), certainly before the required bonds were posted, and without question before he swore out the statutorily-mandated oath, including but not limited to reaching out to banks, and on October 21, 2019, making filings in the real property records.

24. Even more troubling is that as recently as June 25, 2020, Milligan admitted under oath to not having familiarity with the Partnership Agreements, which govern the rights and responsibilities of the partners, as well as his rights and responsibilities as receiver, upon stepping into the shoes of the General Partner.

25. On October 14, 2019, Milligan filed his required receiver's bond in the amount of $10,000.00. The same day, Mitte filed an applicant's bond in the amount of $100,000.00. But since Milligan failed to file the statutorily- required oath until November 4, 2019, that is the earliest date the Arbitration Receivership could have become effective. Any responsible fiduciary of the Court, especially one with the experience Milligan claims to have, would have known his oath was a prerequisite to effectiveness of his receivership.

26. When counsel for the Limited Partnerships brought the failure to file oath to Lemmon and Milligan's attention, Milligan had acknowledged his failure to take the required oath in an interim report submitted in the Arbitration (the oath required by Tex. Civ. Prac. & Rem. Code

§ 64.022).  That is, he waited to take the oath until **<u>after</u>** he had taken many if not most of the actions described in the interim report, under the guise of being a lawfully-appointed receiver. All the actions he took prior to November 4, 2019, were thus unquestionably unauthorized. *See Harmon v. Schoelpple*, 730 S.W.2d 376, 378 (Tex. App.—Houston [14th Dist.] 1987, no writ) (reversing trial court order appointing a receiver and enjoining the receiver from entering the receivership property in part because the receiver did not take an oath).

27. Further, email correspondence between and among Chester, Lemmon and Milligan from prior to the hearing on the receivership appointment also show that as early as September 4, 2019 the parties were aware the Arbitration Receivership would likely not have any effect until confirmed by the district court. Exhibit 2.  Indeed, on or about October 31, 2019, Mitte sought confirmation of the Arbitration Receivership.  Despite knowing he had not taken his oath and that district court confirmation was necessary for him to exercise any authority, on or about October 23, 2019, Milligan had already begun contacting the Partnership' lenders and banks and executing the  plan to orchestrate a fire-sale and his hefty pay day.

28. The Super Majority intervened and asked for a continuance to allow counsel to get up to speed before the district court considered the request for confirmation.  Chester blocked that effort and set a hearing on the motion for a date to which the parties had not agreed in advance. The arbitrator's interlocutory order was summarily confirmed in a less than one hour hearing. ("Confirmation Order").

29. Given the unseemliness of the foregoing ratification of an interlocutory order in an arbitration outside its jurisdiction, the Limited Partnerships immediately sought mandamus review. On November 6, 2019, the Third Court of Appeals stayed the Arbitration Receivership in its

11

entirety. On November 20, 2019, in compliance with the Third Court of Appeals' decision, the Arbitrator stayed the Arbitration Receivership.

30. Immediately after the November 6, 2019 stay, Milligan, Chester, Lemmon and Mitte began conniving about how they could effectuate their scheme in spite of the Court of Appeals stay. Exhibit 3. On November 13, 2019, Mitte countered by filing an application for a receiver in Case No. D-1-GN-18-007636, again disingenuously proffering Milligan as a "neutral" to serve as receiver.

31. Suspecting collusion among Milligan, Lemmon, Chester and the Mitte Foundation, the Limited Partnerships asked Lemmon to produce all communications between and among them, which were long overdue. Lemmon and Milligan refused to provide those communications, offering no plausible excuse. The Limited Partnerships had no alternative but to file a subpoena duces tecum directing Milligan to produce the documents. Even then, they were not produced to the Limited Partnerships until the morning of the hearing on the application to appoint a receiver. The documents showed that reason for withholding this production was that Milligan was specifically instructed to do so in an email from Chester, and in typical fashion, Milligan acquiesced.

32. Upon reviewing the untimely production, it became clear why Lemmon and Milligan had resisted producing information that rightly belonged to the Limited Partnerships and which was not subject to any claim of privilege.

33. The documents reveal hundreds of communications that show that Milligan, Chester, Lemmon and Mitte had been colluding and working together since August 2019, if not before, scheming to effectuate a sale of the Limited Partnerships' assets through receivership. In addition, the communications show that the parties would "huddle" and "strategize" before and

after court hearings and filings for scripted performances Exhibit 4. Then, for each filing and hearing, a charade ensued with Chester pulling the strings of Milligan and Lemmon, their puppets. Further, after their efforts were stayed the first time in November 2019, the documents confirmed the Defendants strategizing to find a way to get around the mandamus stay by seeking the appointment of a receiver directly by the district court, a vehicle they were unsure was legally available to them. The documents also show they worked together to ensure that the proposed receivership order would "remove provisions onerous to the receiver" (Exhibit 5) and include a compensation structure that would handsomely reward Milligan if he were to sell the property with as few restrictions as possible on his ability to get paid.  In one document in which the conspirators collaborated on the form of receivership order, Chester specifically instructed Milligan, "the plan will be to sell the property as soon as possible" (Exhibit 6) Milligan began to effectuate this plan the moment he was appointed as receiver in the arbitration, and continually thereafter.

34.     Chester and the Mitte Foundation knew that they have no contractual right to force a sale of the property under the terms of the Partnership Agreements; that right belongs only to the Super Majority Partners.  They chose Milligan as their front man to try to pull off an expedited and otherwise ill-advised sale of the properties, to the detriment of the largest owners and the parties with the most capital at risk in the investments, the Super Majority Partners. Milligan did happily his part – acting at once to try to force a sale – at the promise of an egregiously over market pay-day upon a sale. Lemmon not only condoned Milligan's actions, but aided and abetted them through is actions as counsel for Milligan and at times with the threat of use of force or law enforcement.  Milligan and Lemmon are complicit, holding themselves out to be neutrals and to be honest fiduciaries, when they are in fact acting at the behest of the Mitte Foundation.  They have a considerable incentive to do so given the egregious compensation structure upon to which

13

all of them agreed.  To date, Chester and Lemmon have refused to provide their engagement agreement. Milligan has failed to file the required quarterly reports revealing the costs and expenses (including their own) that they have incurred on behalf of the Limited Partnerships, and at the price of not only the Super Majority Partners, but also of public charitable funds held by the Mitte Foundation.

35.     Finally, the production showed that Chester specifically instructed Milligan and Lemmon not to produce documents to the partnerships "until the last possible time required under statute," which explains why the production was only tendered the morning of the hearing on the Mitte's district court application to appoint a receiver. Once again Milligan did Chester's bidding and acted at his specific instruction, and once again clearly demonstrating he is not and was not acting as a neutral and disinterested receiver entrusted with extraordinary power under statute.

**G.**     **Unable to effectuate their plan in the Arbitration Receivership, the Mitte Foundation and its agents attempt to insert Milligan through the district court and continue their efforts to undermine the Limited Partnerships and enrich themselves.**

36.     On December 9, 2019, a hearing was held before Judge Soifer on the motion Chester filed to have a receiver (again the hand-picked and unvetted Milligan) appointed directly by the District Court.  On December 10, 2019, Judge Soifer granted Mitte's and Chester's request and appointed Milligan (represented again by Lemmon) as receiver for the separate receivership (the "District Court Receivership"), a separate and distinct receivership that would become effective only upon payment of a second set of bonds, one to be filed by the applicant and one to be filed by the receiver, as well as a separate statutorily-required oath to be sworn out by the putative Receiver Milligan.  The Limited Partnerships appealed the District Court Receivership on December 11, 2019.

14

37. Milligan posted his $10,000.00 bond and his statutorily-required oath in the District Court Receivership on December 12, 2019. Mitte, however, failed to post the bond required in the District Court Receivership and did not do so until January 7, 2020. Once again, just as he had done under the Arbitration Receivership, Milligan began taking active and consequential steps under the District Court Receivership, exercising the extraordinary powers inherent in a receivership order before it became effective.

38. On December 13, 2019, before the District Court Receivership ostensibly became effective, Milligan brought suit in a case now assigned Case No. D-1-19-008609 (the "Fraudulent Transfer Lawsuit"), alleging improprieties in the lawful transfer of funds by the Partnership. Receiver conducted no diligence other than summarily looking at bank statements prior to filing this suit. Further, the Receiver has recently acknowledged under oath that he had not conducted a sufficient investigation into the law, the facts and the governing documents before filing the Fraudulent Transfer Lawsuit. That acknowledgement must of course be attributed equally to his counsel Lemmon. Once again, had they read the governing Partnership Agreements prior to filing this suit, they would have known that the transfers they allege were problematic were specifically contemplated under the Limited Partnerships. The pursuit of this frivolous litigation has harmed the Super Majority by burdening the Partnerships with additional cost and expense of litigation and creating a cloud over the Partnerships ability to conduct business.

39. On December 19, 2019, the Third Court of Appeals once again and put a halt to the District Court Receivership, by placing additional restrictions on the receivership pending a follow up hearing on supersedeas with the district court.

40. On January 6, 2020, a follow up hearing was held in district court in the Document Production case. At this follow up hearing, the Limited Partnerships presented evidence showing

15

that the Applicant's bond required to make the District Court Receivership effective had not yet been posted by the Mitte Foundation.

41.     Milligan gave voice to the obvious, acknowledging that if Judge Soifer were not to find that the receivership was effective as of December 10, 2019, the Fraudulent Transfer Lawsuit he had hastily filed on December 13, 2019 on Mitte's behest, would have been barred by limitations. Mitte argued that it had satisfied its bond requirement by the posting of the bond under the Arbitration Receivership, even though Milligan's posting of an additional bond and oath clearly evidenced an understanding that new bonds were necessary under this new order. Judge Soifer seemingly solved Milligan's and Mitte's dilemma by entering a retroactive ratification of her order to allow Milligan's claims in this lawsuit that otherwise would be barred by limitations to proceed and directed "out of an abundance of caution" that Mitte file an additional bond in the amount of $100,000.00.

42.     The requirement to file such bond was an express condition to the effectiveness of the December 10, 2019 order, and by later changing the requirements for the effectiveness of her order, Judge Soifer thus usurped the legislative function by rewriting the state code governing receivership, admittedly one of the harshest remedies available.

43.     Since that time, Milligan has engaged in a series of acts inconsistent with the best interests of both the Super Majority and the Partnerships, and in breach of the express terms of the Limited Partnership Agreements. He stands to misuse, waste, and squander Limited Partnership assets, specifically those of the Super Majority and other unnamed minority partners. Milligan has also taken multiple actions without notifying the other limited partners, including the Super Majority, and without their consent, in violation of the Limited Partnership Agreement.

44.     Those acts include preparation and presentation of a Plan of Liquidation that would result in the squandering of Partnership assets, without even so much as contacting the Super Majority Partners has by far the most capital investment at risk.

45.     Milligan is receiving a guaranteed hourly fee but also stands to be rewarded with an outrageously disproportionate contingency fee at the conclusion of this litigation.  He has blatantly acted not in the best interest of the Limited Partnerships but at the behest of the Mitte Foundation, Lemmon, and Chester, and has certainly entirely failed to take into consideration the best interests of the Super Majority Partners.  If he were successful in his efforts, including engineering a fire sale of the properties, that his compensation could, upon information and belief, result in a nearly $4 million pay day to Milligan, which notably is greater than the fair market value of Mitte's entire interest in both Partnerships.  This egregious back-end contingency fee did not come about by coincidence. Milligan's handwritten notes from a phone call on September 24, 2019 between Chester and Milligan show that the Defendants and the Mitte board of directors engineered Milligan's compensation to pay out a higher contingency fee windfall to both Milligan and Lemmon (Milligan's handwritten notes state that "[Mitte board of directors] strongly prefer % for GSM [Gregory S. Milligan and] Lemmon") at the expense of the Super Majority Partners, and significantly reduce the up-front cost of receivership to Mitte.  This had the effect of foisting the egregious contingency expense onto the Super Majority Partners given their lion's share ownership of the Partnerships (Milligan's handwritten notes state *"[Mitte is] only paying 6-11% [and] 15% [] total fee so [do not] care as much about % but feel it should be a single digit #])*.Exhibit 7.

46.     Alarmingly, despite the extraordinary powers he is entrusted with as a fiduciary to the Limited Partnerships and its equity holders under statute, as recently as June 25, 2020, Milligan

17

testified that he has not even taken the time to understand and become familiar with the Partnership Agreements that govern the Limited Partnerships, the rights, responsibilities and obligations of the partners, and that govern his own authorities and scope, as he under the District Court Receivership steps into the shoes of the General Partners, whose scope of authority and related restrictions are expressly governed by the Limited Partnership Agreements. If he had, he would have seen many of his actions are strictly forbidden, or otherwise require the consent of the Super Majority Partners who bring this action.

47.     Perhaps most egregiously, at no time since his original appointment in October 2019, has Milligan ever attempted to contact, meet with, or communicate in any way with the Super Majority Partners regarding their investment, their at-risk capital, the Partnerships or his receivership.  Nor upon information and belief has he communicated with other unnamed minority partners. He has even gone so far as to file a recommendation to liquidate the assets of the Trinity Partnership, summarily deciding doing so is in the best interest of the partners when he has not even asked the Super Majority Partners, who hold veto power over any material decision making and have the most significant capital at risk, what they wish to achieve from the investment.

48.     As previously noted, Lemmon and Chester have failed to produce their engagement agreements.  Milligan has failed to produce required quarterly reports indicating the fees and expenses he has incurred to the Partnerships.  There is no legitimate explanation for Defendants' otherwise inexplicable actions that have jeopardized or that stand to jeopardize the financial position of the Limited Partnerships, the Super Majority, the charitable funds held in trust by the Mitte Foundation, and everyone else with a valid interest in the Limited Partnerships.

18

49.     As a consequence of these events and the course of self-dealing between and among the Defendants, the SuperMajority Limited Partners have been substantially harmed and stand to suffer further harm if declaratory relief is not granted as soon as practicably possible.

## COUNT 1 – SUIT FOR DECLARATORY RELIEF

50.     The Super Majority incorporates the foregoing paragraphs as if fully set forth herein.

51.     The purpose of a declaratory action is to establish existing rights, status, or other legal relationships. *City of El Paso v. Heinrich*, 284 S.W.3d 366, 370 (Tex. 2009).  A declaratory judgment is appropriate when there is a justiciable controversy about the rights and status of the parties, and the declaration would resolve the controversy. *Bonham State Bank v. Beadle*, 907 S.W.2d 465, 467 (Tex. 1995).

52.     As set forth above, there is a justiciable controversy concerning the lawfulness of the Arbitration Receivership and the District Court Receivership.

53.     Assuming arguendo the Arbitration Receivership and the District Court Receivership were lawfully-created, there is a justiciable controversy as to the date each became effective.

54.     Assuming arguendo the Arbitration Receivership and the District Court Receivership were lawfully-created, and that a date or event upon which each became effective can be pinpointed, there remains a justiciable controversy whether in either proceeding Milligan was properly appointed to be receiver, given the amount of undisclosed information concerning his conflicts of interest that later came to light.

55.     And finally, assuming arguendo Milligan was properly appointed to be a receiver in either or both proceedings, there is a justiciable controversy about which if any of his actions

19

and inactions was consistent with (i) the respective receivership orders; (ii) the governing Agreements; and (iii) Texas law governing receiverships.

56.     It is for these reasons that the Super Majority seeks a declaratory judgment under Texas Civil Practice and Remedies Code Section 37.004(a) to determine the lawfulness and scope, if any, of the receiverships involuntarily imposed in the Arbitration and in the Document Production Lawsuit.

57.     Similarly, the Super Majority seeks a declaratory judgment under the authority of Texas Civil Practice and Remedies Code Section 37.004(a) to determine and define Milligan's authority, if any, to act as a receiver given his failure and the failure of Mitte, Lemmon, and Chester, to disclose his pre-existing conflicts and his failure to fulfill the applicable statutory requisites before he began taking action as a putative receiver.

58.     The Super Majority also seeks a declaratory judgment under the authority of Texas Civil Practice and Remedies Code Section 37.004(a) to determine the validity of Judge Soifer's post-dating the effective date of the District Court Receivership to permit the actions taken by Milligan between December 10, 2019 (the date of the order requiring Mitte to post bond prior to the orders' effectiveness) and January 7, 2020 (the date Mitte filed its required bond).

59.     Finally, the Super Majority seeks a declaratory judgment as to its bargained for, contractual rights under the Limited Partnership Agreements, those of the Mitte Foundation, including but not limited to the limitations on the scope and authority of the receiver in light of the foregoing.

60.     Attorney Fees.  The Super Majority is entitled to recover reasonable and necessary attorney's fees that are equitable and just under Texas Civil Practice & Remedies Code Section 37.009 because this is a suit for declaratory relief.

20

## COUNT 2 – BREACH OF FIDUCIARY DUTY

61.     The Super Majority incorporates the foregoing paragraphs as if fully set forth herein and states the following request for relief in the alternative.

62.     The Super Majority entered into the Limited Partnership Agreements in good faith with the Mitte Foundation under a contractual arrangement supported mutual by consideration.

63.     Assuming arguendo that the Arbitration Receivership and/or the District Court Receivership were validly-created and that Defendant Milligan was lawfully appointed as receiver in each or either proceeding, then he assumed the role of purported receiver, Defendant Milligan assumed a fiduciary duty requiring him to act in the best interest of the Partnerships and those holding an interest in the Partnerships.  As such, a fiduciary relationship existed, and Milligan owed a fiduciary duty to the Super Majority Limited Partners.

64.     Milligan breached that fiduciary duty by (i) holding himself out as having the ability to control the affairs of the Limited Partnerships; (ii) supporting a clandestine effort by Mitte to purchase a loan securing one of the properties in order to manufacture a sham default and move precipitously to foreclose; (iii) conspiring to loot the Limited Partnerships of valuable assets; (iv) interfering with the Limited Partnerships' other business relationships; and (v) otherwise encumbering the Limited Partnerships with unnecessary litigation, expenses, and other obligations, including this lawsuit.

65.     Defendant Lemmon aided and abetted Defendant Milligan's breaches of fiduciary duty outlined above.

66.     As a direct and proximate cause of Milligan's breach of his fiduciary duties, and Lemmon's aiding and abetting thereof, the Super Majority has been significantly damaged in an amount within the jurisdictional limits of the court, which exact amount will be determined at trial.

## COUNT 3 – CONVERSION

67.     The Super Majority incorporates the foregoing paragraphs as if fully set forth herein.

68.     Under the terms of the Limited Partnership Agreements and because they have fulfilled all performance requirements, the Super Majority naturally owns its substantial interests in the Limited Partnerships and the assets of the Limited Partnerships.  Milligan assumed and exercised dominion and control over the Super Majority's property in an unlawful and unauthorized manner, to the exclusion of the Super Majority and inconsistent with the Super Majority's rights.  The Super Majority has made it clear that it vehemently opposes the liquidation plan and has demanded that Milligan respect its interest. Milligan, in collusion with the Mitte Foundation, Lemmon, and Chester, and with their assistance, has refused to honor those demands and has refused return the Super Majority's property so as to allow the Super Majority to exercise its contractual rights.

69.     Thus, Milligan, with the knowing participation and/or at the insistence or instigation of the Mitte Foundation, Lemmon, and Chester, converted the Super Majority's property and interests to his and their own use.  As a consequence, the Super Majority Partners have incurred substantial damages.

70.     The Super Majority accordingly seeks damages within the jurisdictional limits of the court in an amount to be determined at trial.

22

## COUNT 4 – BREACH OF CONTRACT

71.     The Super Majority incorporates by reference the foregoing paragraphs as if fully set forth herein in seeking relief *assuming arguendo* that that receiverships were properly created and that Defendant Milligan was validly appointed as a receiver.

72.     The Super Majority entered into the Limited Partnership Agreements with the Mitte Foundation, supported by mutual consideration.  The Super Majority has fully performed all of their obligations under the Agreements.  All conditions precedent under the Limited Partnership Agreement necessary for the Super Majority to assert this claim have been met.

73.     Milligan in his capacity as putative receiver or in the guise of a putative receiver, that is, purportedly standing in WC 1st and Trinity, LP's shoes and WC 1st and Trinity, GP, LLC's shoes, has breached the Agreements, including Sections 5.3 and 5.4(a)(ii) and (c) by squandering the assets of the Partnerships in pursuing frivolous litigation and in other acts of reckless spending.  Those acts include but are not limited to (i) holding himself out as having the ability to control the affairs of the Partnerships; (ii) supporting a clandestine effort by Mitte to purchase a loan securing one of the properties in order to manufacture a sham default and move precipitously to foreclose; (iii) conspiring to loot the Partnerships of valuable assets; (iv) interfering with the Partnerships' other business relationships; and (v) otherwise encumbering the Partnerships with unnecessary litigation, expenses, and other obligations.

74.     All of these actions constitute actionable, material, breaches of the Limited Partnership Agreements, attributable to Milligan as purported receiver.

75.     As a direct and proximate cause of these breaches, aided and abetted by the Mitte Foundation, Lemmon, and Chester, the Super Majority Partners have been seriously damaged in

an amount within the jurisdictional limits of the court, the exact amount of which will be determined at trial.

## COUNT 5 – TORTIOUS INTERFERENCE WITH CONTRACT

76.     The Super Majority incorporates the foregoing paragraphs as if fully set forth herein.

77.     The Super Majority entered into the Limited Partnership Agreements, forming a binding contract supported by consideration, which was subject to interference and which was necessarily susceptible to interference.  Milligan, on his own behalf and at the instigation of the Foundation, Lemmon, and Chester willfully and intentionally interfered with that contract.  That interference has proximately caused substantial damage to the Super Majority.

78.     By pursuing frivolous litigation and incurring unjustifiable expenses that are being charged to the Limited Partnership, Milligan, the Foundation, Lemmon, and Chester are interfering with the rights and privileges of the Super Majority under the express terms of the Limited Partnership Agreements.

79.     The Super Majority accordingly seek damages within the jurisdictional limits of the court in an amount to be determined at trial.

## COUNT 7 – CIVIL CONSPIRACY

80.     The Super Majority incorporates the foregoing paragraphs as if fully set forth herein.

81.     From the outset of the events described above, Milligan, the Foundation, Lemmon, and Chester had a meeting of the minds on their object and course of action, which was to permit

a fractional share of the Limited Partnerships to seize control the Limited Partnerships and to thwart the purposes of the Limited Partnership Agreements and attempt to effectuate a sale of the Partnership and the Super Majority Partners' property.

82.     They have done this in order to enrich themselves.

83.     They have engaged in protracted and unnecessary litigation at the cost of the Limited Partnership, all the while substantially diluting the interests of the Super Majority Partners and foiling the rights and privileges of the Super Majority under the Agreements.

84.     Milligan, in his capacity as putative receiver and in his individual capacity, has taken multiple unlawful overt acts in furtherance of the civil conspiracy, including but not by any means limited to contacting lenders, banks, tenants, and other third parties in connection with efforts to sell the assets prematurely and ill-advisedly and by pursuing frivolous litigation. Milligan's actions have proximately caused substantial damages to the Super Majority.

85.     The Super Majority accordingly seek damages within the jurisdictional limits of the court in an amount to be determined at trial.

## JURY DEMAND

86.     The Super Majority demands a jury trial and tenders the appropriate fee with this petition.

## CONDITIONS PRECEDENT

87.     All conditions precedent to the Super Majority's claims for relief have been performed or have occurred.

25

**REQUEST FOR DISCLOSURE**

88.     Under Texas Rule of Civil Procedure 194, the Super Majority requests that all defendants disclose, within 50 days of the service of this request, the information or material described in Rule 194.2 of the Texas Rules of Civil Procedure.

**PRAYER**

89.     For these reasons, the Super Majority asks that the Defendants be cited to appear and answer and that the Court declare the Receiverships null and void.   In addition, the Super Majority asks for the following damages:

    a.   Actual damages;

    b.   Disgorgement of all fees;

    c.   Pre-judgment and post-judgment interest;

    d.   Court costs;

    e.   Attorneys' fees; and

    f.   All other relief to which they may be justly entitled.

Respectfully submitted,

**GREGOR WYNNE ARNEY, PLLC.**

*/s/ Michael J. Wynne*
Michael J. Wynne
State Bar No. 00785289
909 Fannin, Ste. 3800
Houston, Texas 77010
Phone: 281.450.7403
Email: mwynne@gcfirm.com

**COUNSEL FOR THE SUPER
MAJORITY LIMITED PARTNERS**

26

Filed in The District Court of Travis County, Texas

FEB 22 2019 RT

At _____ 4:21 P M.

Velva L. Price, District Clerk

CAUSE NO. D-1-GN-18-007636

| | | |
|---|---|---|
| THE ROY F. & JOANN COLE MITTE FOUNDATION, | § § § | IN THE DISTRICT COURT OF |
| *Plaintiff,* | § § | |
| v. | § § | |
| | § | TRAVIS COUNTY, TEXAS |
| WC 1ST AND TRINITY, LP, WC 1ST AND TRINITY GP, LLC, WC 3RD AND CONGRESS, LP AND WORLD CLASS CAPITAL GROUP, LLC | § § § § § | |
| | § | 126TH JUDICIAL DISTRICT |
| *Defendants.* | § | |

## AGREED PROTECTIVE ORDER

The Parties Agree as follows:

1.     Within 5 business days Defendants shall produce to Plaintiff the records requested in Plaintiff's Original Petition and any other books and records of the WC 1st and Trinity LP and the WC 3rd and Congress, LP ~~that would be available to Plaintiff under Article 8 the Partnership Agreements.~~

2.     The provisions of this Agreed Protective Order apply to information provided by Defendants that relates only to the books and records of WC 1st and Trinity LP and WC 3rd and Congress, LP.

3.     Prior to production of any documents by Defendants to Plaintiff pursuant this Order, Defendants shall clearly mark as "CONFIDENTIAL" any documents that cannot be disseminated by Plaintiff to third-parties because they contain any confidential or proprietary information.

4.     If Plaintiff disputes the designation of "Confidential" for any document produced under this Order, then Plaintiff will, within seven (7) days of the production, Defendants

remove/withdraw the designation.  If Defendants refuse or do not respond within fifteen business days, the Plaintiff may move the Court for relief with notice to Defendants.

5.      The documents produced under this order with the designation of "Confidential" may only be seen or reviewed by:

       a.      Plaintiff's retained attorneys and those necessary person' employed by or in contractual relationship with Plaintiff's counsel;

       b.      Plaintiff's staff and Plaintiff's Board members; and

       c.      professionals and consultants engaged by Plaintiff or Plaintiff's counsel to assist Plaintiff with in this matter.

Those parties described in Paragraph 5(c) shall, before being provided with copies of any such documents, sign an agreement not to disclose the document so designated and/or the contents of those documents to any person not authorized to review such records under this Order and submit themselves to the jurisdiction of this Court for enforcement.  Plaintiff shall maintain copies of all agreements for access that are signed but are not required to provide those to Defendants unless ordered by the Court upon a showing of good cause.

6.      Reference is made to the AAA Arbitration filed by Defendants against Plaintiff.  Nothing in this particular order shall alter, amend or otherwise modify any order or stipulation in that matter, including the arbitrator's rulings on confidentiality.  Nor shall this agreement in any constitute a waiver of Defendants' rights or positions in that matter.

7.      Further, the parties agree and understand that the District Court in this case and the Arbitrator empaneled in the AAA arbitration have jurisdiction over those respective matters and the parties subject hereto, and a ruling by the District Court or the Arbitrator –or vice versa, as the

Unofficial copy Travis Co District Clerk Velva L. Price

case may be – has the appropriate impact/effect within that respective tribunal and the parties

subject to the jurisdiction thereto.

8. All parties waive their right to appeal this order.

SIGNED AND ENTERED this 21ᵃ day of February, 2019.

_____
JUDGE PRESIDING

Approved as to Form and Substance

_____
Attorney for Plaintiff

_____
Attorney for Defendant

- 3 -

| From: | Stephen Lemmon |
|---|---|
| To: | Chester, Ray; Gregory S. Milligan |
| Cc: | Escobar, Manuel; Rhonda Mates |
| Subject: | RE: World Class |
| Date: | Wednesday, September 4, 2019 10:00:16 AM |

We are generally available this afternoon and tomorrow.  My general thoughts re this:

- I think there is no question that the arbitrator can create remedies, including a receivership
- My only concern is regarding the effect of the receivership on third parties, like the mortgage holder:
  - The general doctrine of *custodia legis* protects receivership property from acts by any person or party without court approval.
  - I am simply not sure whether that same protection applies if the receivership is imposed by an arbitrator as opposed to a court.
- Query:  Would Tx Civ Prac and Rem. Code section 171.086(b) allow a parallel application in district court for appointment of a receiver?  If so that would solve the potential problem.

**Stephen Lemmon**

**STREUSAND | LANDON | OZBURN | LEMMON LLP**
Spyglass Point | 1801 South MoPac Expressway | Suite 320 | Austin, Texas 78746
(d) (512) 220-2688 | (o) (512) 236-9900 | (f) (512) 236-9904
lemmon@slollp.com | www.slollp.com

This electronic message contains information from the law firm of Streusand, Landon, Ozburn & Lemmon, LLP.  The contents may be privileged and confidential and are intended for the use of the intended addressee(s) only.  If you are not an intended addressee, note that any disclosure, copying, distribution, or use of the contents of this message is prohibited.  If you received this e-mail in error, please delete it and all copies and contact me at lemmon@slollp.com and/or (512) 220-2688.  Thank you.

**IRS Circular 230 Disclosure:**  To ensure compliance with requirements imposed by the IRS, we inform you that any U.S. Federal tax advice contained in this communication, (including any attachments) is not intended to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing, or recommending to another party any transaction or matter addressed herein.

**From:** Chester, Ray <rchester@mcginnislaw.com>
**Sent:** Wednesday, September 4, 2019 9:47 AM
**To:** Gregory S. Milligan <gmilligan@harneypartners.com>
**Cc:** Escobar, Manuel <mescobar@mcginnislaw.com>; Stephen Lemmon <Lemmon@slollp.com>; Rhonda Mates <Mates@slollp.com>
**Subject:** Re: World Class

If you guys have time to get on a call this week to discuss this issue, please let me know. I can make myself available, and I think it would be productive.

Sent from my iPad

On Sep 4, 2019, at 9:43 AM, Gregory S. Milligan <gmilligan@harneypartners.com> wrote:

Manuel:

Thanks for the summary.  I've also added Steve and Rhonda to this thread so

**Rhonda Mates**

| | |
|---|---|
| **From:** | Rhonda Mates |
| **Sent:** | Thursday, November 7, 2019 12:05 PM |
| **To:** | Ray Chester |
| **Subject:** | Fwd: Receivership Statute -- Texas Business Organizations Code |
| **Attachments:** | Spiritas v Davidoff.doc; ATT00001.htm |

The general receivership statute (Tex. Civ. Prac. & Rem. Code ch. 64), which provides that the court may appoint a receiver when the applicant has a probable interest or right to the property and the property is in danger of being lost, removed, or materially injured. TRCP § 64.001(b). However, Tex. Bus. Org. Code § 11.401 provides: "A receiver may be appointed for a domestic entity or for a domestic entity's property or business **only** as provided for and on the conditions set forth in this code." (emphasis added) The bases for which a receiver can be appointed for a domestic entity under the TBOC are more strict those set forth under the general receivership statute.

Under the TBOC, a court may appoint a receiver (1) for specific property of a domestic entity located in Texas that is involved in litigation; (2) over the property and business of a domestic entity for the purpose of rehabilitating the entity; or (3) to effect a liquidation of the property and business of a domestic entity. TBOC § 11.402. A receiver can only be appointed under (1) by a court that subject matter jurisdiction or the specific property. § 11.402(a). A receiver can only be appointed under (2) and (3) by a "district court in the county in which the registered office or principal place of business of the domestic entity is located." § 11.402(b).

Receiver for Specific Property  TBOC § 11.403.
A court with jurisdiction over specific property may appoint a receiver in an action "between partners or other jointly owning or interested in the property or fund." § 11.403(a)(3). It must be shown that (i) the property is in danger of being lost, removed, or materially injured, (ii) the court considers that appointment of a receiver is necessary to "conserve the property or fund and avoid damage to interested parties," (iii) all other requirement of law are complied with, and (iv) **the court determines that other available legal and equitable remedies are** **inadequate.**" § 11.403(b). This last requirement is the key difference between the TBOC and TRCP.

Receiver to Rehabilitate a Domestic Entity § 11.404
The district court in the county in which the entity has its registered office or principal place of business may appoint a receiver for the entity's property and business in an action by an owner or member of the entity if it is established (i) the entity is insolvent or in imminent danger of insolvency, (ii) the governing

person of the entity are deadlocked in the management of the entity and irreparable injury to the entity is being suffered or is threatened because of the deadlock, (iii) the actions of the governing person are illegal, oppressive, or fraudulent, or (iv) the property of the entity is being misapplied or wasted. § 11.404(a)(1). The court may appoint a receiver under this section only if (i) circumstances exist that are considered by the court to necessitate the appointment of receiver to conserve the property and business of the entity and avoid damage to interested parties, (ii) all other requirements of law are complied with, and **(iii) the court determines that all other available legal and equitable remedies, including the appointment of a receiver for specific property of the domestic entity under § 11.402(a), are inadequate.**

<u>Receiver to Liquidate Domestic Entity</u> § 11.405
This provision does not apply to the circumstances of this case so I will not address them here.

TBOC provides that that "if the condition necessitating the appointment of a receiver is remedied, the receivership shall be terminated immediately..." §§ 11.403(d), 11.404(c).

Rhonda Mates

STREUSAND | LANDON | OZBURN | LEMMON LLP
Spyglass Point | 1801 South MoPac Expressway | Suite 320 | Austin, Texas 78746
(d) (512) 220-2689 | (o) (512) 236-9900 | (f) (512) 236-9904
mates@slollp.com | www.slollp.com

2

**Stephen Lemmon**

| | |
|---|---|
| **From:** | Chester, Ray <rchester@mcginnislaw.com> |
| **Sent:** | Thursday, October 10, 2019 11:17 AM |
| **To:** | Stephen Lemmon; Rhonda Mates |
| **Subject:** | WC |

I'd like to shut this call down now and huddle privately for strategic reasons.

Ray

*Ray Chester*
Board Certified Civil Trial Law and Personal Injury Trial Law
**McGINNIS LOCHRIDGE**
600 Congress Avenue, Suite 2100
Austin, TX 78701
o 512-495-6051 f 512-505-6351

 

**NOTICE:** This email contains information that is confidential, proprietary, privileged, or otherwise legally protected from disclosure. If you are not the named addressee, you are not authorized to read, print, retain, copy, or disseminate this email or any part of it. If you received this email in error, please immediately notify the sender by reply email, and delete all copies of this email and any attachments.

5

| | |
|---|---|
| From: | Stephen Lemmon |
| To: | Chester, Ray; Shaunessy, Michael A. |
| Cc: | Gregory S. Milligan; Rhonda Mates |
| Subject: | RE: World Class Order |
| Date: | Friday, October 11, 2019 10:19:20 AM |
| Attachments: | image008.png |

OK.

**Stephen Lemmon**

**STREUSAND | LANDON | OZBURN | LEMMON** LLP
Spyglass Point | 1801 South MoPac Expressway | Suite 320 | Austin, Texas 78746
(d) (512) 220-2688 | (o) (512) 236-9900 | (f) (512) 236-9904
lemmon@slollp.com | www.slollp.com

This electronic message contains information from the law firm of Streusand, Landon, Ozburn, & Lemmon, LLP. The contents
may be privileged and confidential and are intended for the use of the intended addressee(s) only. If you are not an intended
addressee, note that any disclosure, copying, distribution, or use of the contents of this message is prohibited. If you received this
e-mail in error, please delete it and all copies and contact me at lemmon@slollp.com and/or (512) 220-2688. Thank you.

**IRS Circular 230 Disclosure:** To ensure compliance with requirements imposed by the IRS, we inform you that any U.S. Federal
tax advice contained in this communication, (including any attachments) is not intended to be used, and cannot be used, for the
purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing, or recommending to another party
any transaction or matter addressed herein.

**From:** Chester, Ray <rchester@mcginnislaw.com>
**Sent:** Friday, October 11, 2019 10:15 AM
**To:** Stephen Lemmon <Lemmon@slollp.com>; Shaunessy, Michael A.
<MShaunessy@mcginnislaw.com>
**Cc:** 'Greg Milligan' <gmilligan@harneypartners.com>; Rhonda Mates <Mates@slollp.com>
**Subject:** RE: World Class Order

Steve,

We just crossed emails with the current draft. But it's not too late to make changes.

I understand and agree with the sentiment behind both of these changes. However, I am extremely
reluctant to suggest substantive chances that were not agreed on yesterday because obviously that
will open the door to Roossien re-arguing everything. I don't want that. I wish you had raised these
on the phone with Covington yesterday.

On the first change, I like it and understand the need, but how would we square that with the
current language and intent of Paragraph 40 which was specifically approved by Covington
yesterday? I am open to specific suggestions on drafting.

On the second change, I think this would be wise on your part, but this has got to come from you. I
suggest that I submit the language in the current draft because that is consistent with what she said
yesterday, but either you or I on your behalf also gently suggest your alternative language.

*Ray Chester*
Board Certified Civil Trial Law and Personal Injury Trial Law
**McGINNIS LOCHRIDGE**
600 Congress Avenue, Suite 2100
Austin, TX 78701
o 512-495-6051 f 512-505-6351

 

MCGINNIS LOCHRIDGE

**NOTICE:** This email contains information that is confidential, proprietary, privileged, or otherwise legally protected from disclosure. If you are not the named addressee, you are not authorized to read, print, retain, copy, or disseminate this email or any part of it. If you received this email in error, please immediately notify the sender by reply email, and delete all copies of this email and any attachments.

**From:** Stephen Lemmon [mailto:Lemmon@slollp.com]
**Sent:** Friday, October 11, 2019 10:03 AM
**To:** Chester, Ray <rchester@mcginnislaw.com>; Shaunessy, Michael A. <MShaunessy@mcginnislaw.com>
**Cc:** 'Greg Milligan' <gmilligan@harneypartners.com>; Rhonda Mates <Mates@slollp.com>
**Subject:** FW: World Class Order

Ray:  Please see below. Can we include the language highlighted and also:

> This order is deemed effective as of the time the Arbitrator's ruling was announced at a
> hearing held Friday, October 4, 2019

**Stephen Lemmon**

**STREUSAND | LANDON | OZBURN | LEMMON** LLP
Spyglass Point | 1801 South MoPac Expressway | Suite 320 | Austin, Texas 78746
(d) (512) 220-2688 | (o) (512) 236-9900 | (f) (512) 236-9904
lemmon@slollp.com | www.slollp.com

This electronic message contains information from the law firm of Streusand, Landon, Ozburn & Lemmon, LLP.  The contents may be privileged and confidential and are intended for the use of the intended addressee(s) only.  If you are not an intended addressee, note that any disclosure, copying, distribution, or use of the contents of this message is prohibited.  If you received this e-mail in error, please delete it and all copies and contact me at lemmon@slollp.com and/or (512) 220-2688.  Thank you.

**IRS Circular 230 Disclosure:**  To ensure compliance with requirements imposed by the IRS, we inform you that any U.S. Federal tax advice contained in this communication, (including any attachments) is not intended to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing, or recommending to another party any transaction or matter addressed herein.

**From:** Gregory S. Milligan <gmilligan@harneypartners.com>
**Sent:** Friday, October 11, 2019 9:59 AM
**To:** Stephen Lemmon <Lemmon@slollp.com>; Rhonda Mates <Mates@slollp.com>
**Subject:** RE: World Class Order

I like that.  I think we have cover with Covington for not fully arguing this on the call yesterday because Roossien filed numerous specific objections to the proposed order, but

he didn't raise the comp issue. Unfair surprise.

I fully expect WC to try and pay me as little (or nothing) later as possible, so I want to get as much in this order as possible to protect against that eventuality.

Thanks,

Gregory S. Milligan, CTP
**Executive Vice President**
Cell: (512) 626-1818



HARNEY PARTNERS

Austin  Chicago  Dallas  Houston  Madison

**From:** Stephen Lemmon <Lemmon@slollp.com>
**Sent:** Friday, October 11, 2019 9:47 AM
**To:** Gregory S. Milligan <gmilligan@harneypartners.com>; Rhonda Mates <Mates@slollp.com>
**Subject:** RE: World Class Order

Greg: There is no "standard" that I know of for compensation disputes in a receivership. I have always seen the courts stick by the terms of their orders, absent some really strange development – like a defalcation.

I would suggest we try to draft in something like:

> The commission compensation to the Receiver will be awarded as set forth herein absent some showing of defalcation, gross negligence, or abuse of the receivership estate by the Receiver.

This might have the advantage of smoking out World Class in case they intend to just screw with you over the fees.

**Stephen Lemmon**

STREUSAND | LANDON | OZBURN | LEMMON LLP
Spyglass Point | 1801 South MoPac Expressway | Suite 320 | Austin, Texas 78746
(d) (512) 220-2688 | (o) (512) 236-9900 | (f) (512) 236-9904
lemmon@slollp.com | www.slollp.com

This electronic message contains information from the law firm of Streusand, Landon, Ozburn & Lemmon, LLP. The contents may be privileged and confidential and are intended for the use of the intended addressee(s) only. If you are not an intended addressee, note that any disclosure, copying, distribution, or use of the contents of this message is prohibited. If you received this e-mail in error, please delete it and all copies and contact me at lemmon@slollp.com and/or (512) 220-2688. Thank you.

IRS Circular 230 Disclosure: To ensure compliance with requirements imposed by the IRS, we inform you that any U.S. Federal tax advice contained in this communication, (including any attachments) is not intended to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing, or recommending to another party any transaction or matter addressed herein.

**From:** Gregory S. Milligan <gmilligan@harneypartners.com>

Unofficial Copy Travis Co. District Clerk Velva L. Price

**Cc:** Rhonda Mates <Mates@slollp.com>
**Subject:** RE: draft order appointing receiver

Thanks.  Let's see what happens at the 9:00a hearing tomorrow, then if we're still a go for Friday, I'll take a granular pass on the draft order.  The form of SEC order has some onerous/restrictive provisions on the Receiver that I don't want to offer up in this matter.

Thanks,

Gregory S. Milligan, CTP
**Executive Vice President**
Cell:  (512) 626-1818

<image005.png>

Austin   Chicago   Dallas   Houston   Madison

**From:** Stephen Lemmon <Lemmon@slollp.com>
**Sent:** Monday, September 9, 2019 2:02 PM
**To:** Chester, Ray <rchester@mcginnislaw.com >
**Cc:** Gregory S. Milligan <gmilligan@harneypartners.com>; Rhonda Mates <Mates@slollp.com>
**Subject:** Re: draft order appointing receiver

Ok.  Thanks.

Sent from my iPhone

On Sep 9, 2019, at 1:43 PM, Chester, Ray <rchester@mcginnislaw.com> wrote:

> The other side's lawyers are withdrawing. Naturally, they want to stay all proceedings for 3 weeks including the receivership hearing. There's a hearing on that tomorrow at 9. I'll call you guys after that.
>
> *Ray Chester*
> Board Certified Civil Trial Law and Personal Injury Trial Law
> **McGINNIS LOCHRIDGE**
> 600 Congress Avenue, Suite 2100
> Austin, TX 78701
> o 512-495-6051 f 512-505-6351
>
> <119090914433802373.gif><119090914433802173.gif>
>
> **NOTICE:** This email contains information that is confidential, proprietary, privileged, or otherwise legally protected from disclosure. If you are not the named addressee, you are not authorized to read, print,

Unofficial copy Travis Co. District Clerk Velva L. Price

| WC 1st and Trinity, LP; WC 1st and Trinity, GP, LLC; WC 3rd and Congress, LP; and WC 3rd and Congress GP, LLC | |
|---|---|
| **Claimants,** | American Arbitration Association |
| -against- | Case No.: 01-19-0000-5347 |
| **The Roy F. & Joann Cole Mitte Foundation** | |
| **Respondent.** | |

## [PROPOSED] ORDER APPOINTING TEMPORARY RECEIVER

WHEREAS this matter has come before this Arbitration Tribunal upon Respondent Mitte Foundation's Motion for a Temporary Restraining Order Freezing Assets, Appointing a Temporary Receiver, and Granting Other Emergency Relief [is this the correct name of the motion or should it be First Amended Motion to Appoint Receiver?];

WHEREAS Claimants WC 1st and Trinity, LP and WC 3rd and Trinity, LP (the "Partnership Claimants") possess significant assets—the full nature and extent of which are not currently known to this Arbitration Tribunal, and the value of which should be preserved during the pendency of this litigation;

WHEREAS this Arbitration Tribunal finds that, based on the record in these proceedings, the appointment of a receiver in this action is necessary and appropriate for the purposes of marshaling and preserving all assets of the Partnership Claimants, and the affiliate entities of Partnership Claimants [what does this mean? Talking about the GP entities? If so, should say: "...the Partnership Claimants and WC 1st and Trinity GP, LLC and WC 3rd and Congress GP, LLC (the "GP Claimants")], as described below;

WHEREAS this Arbitration Tribunal has subject matter jurisdiction over this action and personal jurisdiction over the Parties;

{01472/00002/00240920.1}

Commented [HK1]: (RCC) Change this to "Arbitrator"

Commented [HK2]: (RCC) The latter.

Commented [SMA3]: I would delete this as we do know the assets

Commented [HK4]: (RCC) Agree

Commented [SMA5]: Not sure its significant but by parties are we saying Mitte as well as GP Claimants and Partnership Claimants? We have not defined the term "Parties" and that is concerning.

NOW THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED

THAT:

1.      This Arbitration Tribunal hereby takes exclusive jurisdiction and possession of the

assets, of whatever kind and wherever situated, of the Partnership Claimants and GP Claimants

(collectively, the "Receivership Parties").

2.      Until further Order of this Arbitration Tribunal, Gregory S. Milligan, of the firm

HMP Advisory Holdings, LLC, dba Harney Partners, is hereby appointed to serve without bond

as the Arbitrator's appointment receiver (the "Receiver") for the estates of the Receivership

Parties.

### I.      Asset Freeze

3.      Except as otherwise specified herein, all assets of Receivership Parties

("Receivership Assets") are frozen and may not be conveyed, transferred or in any way

hypothecated until further order of this Arbitration Tribunal. "Receivership Assets" means assets

of any and every kind whatsoever, including without limitation all assets described in this Order,

that are: (a) owned, controlled, or held, in whole or in part, by or for the benefit of any of the

Receivership Parties; (b) in the actual or constructive possession of any of the Receivership

Parties, or other individual or entity acting in concert with or behalf of any of the Receivership

Parties; (c) held by an agent of any of the Receivership Parties, including as a retainer for the

agent's provision of services; or (d) owned, controlled, or held, in whole or in part, by, or in the

actual or constructive possession of, or otherwise held for the benefit of, any corporation,

partnership, trust, or other entity directly or indirectly owned, controlled, or held, in whole or in

part, by any of the Receivership Parties, including assets that have been transferred to other

persons or entities but as to which assets such persons or entities do not have a legitimate claim.

Accordingly, all persons, institutions, and entities with direct or indirect control over any

Receivership Assets— other than the Receiver or law enforcement officials acting within the course and scope of their official duties—are hereby restrained and enjoined from directly or indirectly transferring, setting off, receiving, changing, selling, pledging, assigning, liquidating or otherwise disposing of or withdrawing such Receivership Assets. This freeze shall include, but not be limited to, Receivership Assets that are on deposit with financial institutions such as banks, brokerage firms, and mutual funds, or other institutions.

## II.    General Powers and Duties of Receiver

4.    Except as limited herein, the Receiver shall have all powers, authorities, rights, and privileges heretofore possessed by the officers, directors, managers, and general and limited partners of the Receivership Parties under applicable state and federal law, by the governing charters, by-laws, articles and/or agreements in addition to all powers and authority of a receiver at equity, and all powers conferred upon a receiver by the provisions of the Texas or Federal Rules of Civil Procedure, and this Order.

5.    The trustees, directors, officers, managers, investment advisors, accountants, attorneys, and other agents of the Receivership Parties are hereby removed and dismissed; and all the powers of any partners, directors, officers, and/or managers are hereby suspended. Such persons and entities shall have no authority with respect to the Receivership Parties' operations or assets, except to the extent as hereafter may be expressly granted by the Receiver.

6.    The Receiver shall assume and control the operation of the Receivership Parties and shall preserve all of their claims or interests using the powers set forth in this Order. The Receiver shall have the power to bring suits in law or in equity without further Order of this Arbitration Tribunal. The Receiver may continue and conduct the business of the Receivership Parties in such manner, to such extent and for such duration as the Receiver may deem to be necessary or appropriate, if at all.

{01472/0002/00240920.1}          Page 3 of 20

7.    No person holding or claiming any position of any sort with any of the Receivership Parties shall possess any authority to act by or on behalf of any of the Receivership Parties, unless expressly authorized, in writing, by the Receiver.

8.    Subject to the specific provisions in Sections III through XIII, below, the Receiver shall have the following general powers and duties:

A.    To use reasonable efforts to determine the nature, location, and value of all property interests of the Receivership Parties, including, but not limited to, monies, funds, securities, credits, investments, savings, options, shares, cash, currencies, checks, accounts, vehicles, boats, equipment, fixtures, effects, goods, chattels, lands, premises, leases, claims, notes, membership interests in any limited liability company, partnership interests, contracts, certificates of title, instruments, inheritances, interests in any trust, art, collectibles, furnishings, jewelry, personal effects, digital currencies, virtual currencies, cryptocurrencies, digitial or electronic property, casino accounts, deposits, or chips, rights, and other assets, together with all rents, profits, dividends, interest or other income attributable thereto, of whatever kind, which the Receivership Parties own, possess, have a beneficial interest in, or control directly or indirectly (the foregoing, together with all assets described in this Order collectively may be referred to as the "Receivership Assets" or the "Receivership Estates");

B.    To take custody, control, and possession of all Receivership Assets and records relevant thereto from the Receivership Parties;

C.    To manage, control, operate, and maintain the Receivership Estate and hold in his possession, custody, and control all Receivership Assets, pending further Order of this Arbitration Tribunal;

D.    To use Receivership Assets for the benefit of the Receivership Estate, making payments and disbursements and incurring expenses as may be necessary or advisable in the ordinary course of business in discharging his duties as Receiver;

E.    To take any action that, prior to the entry of this Order, could have been taken by the officers, directors, partners, managers, trustees, and agents of the Receivership Parties, except as limited by this Order;

F.    To engage and employ persons in his discretion to assist him in carrying out his duties and responsibilities hereunder, including, but not limited to, accountants, attorneys, securities traders, registered representatives, financial or business advisers, liquidating agents, real estate agents, forensic experts, brokers, traders, or auctioneers;

G. To take such action as necessary and appropriate for the preservation of Receivership Assets or to prevent the dissipation or concealment of Receivership Assets;

H. To the extent necessary to locate and identify assets, the Receiver is authorized to issue subpoenas for documents and testimony consistent with the Texas or Federal Rules of Civil Procedure;

I. To resist and defend all suits, actions, claims and demands which may now be pending or which may be brought by or asserted against the Receivership Estate; and,

J. To take such other action as may be approved by this Arbitration Tribunal.

> **Commented [SMA6]:** Perhaps its elsewhere but the Receiver should have the right to bring suits and/or initiate arbitrations as necessary to carry out his responsibilities.

9. Unless otherwise limited by this Order, the Receiver is authorized to exercise all equitable powers under applicable law.

10. The Receiver may delegate to his agents any of the powers of the Receiver granted to him by this Order.

11. The Receiver may seek further Orders of this Arbitration Tribunal regarding standing powers of the Receiver, operations of Receivership Parties, and administration of Receivership Assets as may be deemed necessary to conserve the Receivership Assets, secure the best interests of creditors, investors, and other stakeholders of the Receivership Parties, and protect the interests of the Receiver.

### III. Access to Information

12. The past and/or present officers, directors, agents, managers, general and limited partners, trustees, attorneys, accountants, and employees of the Receivership Parties, as well as those acting in their place, are hereby enjoined, ordered and directed to preserve and turn over to the Receiver forthwith all paper and electronic information of, and/or relating to, the Receivership Parties and/or all Receivership Assets; such information shall include but not be limited to books, records, documents, accounts, all financial and accounting records, balance sheets, income

Unofficial copy Travis Co. District Clerk Velva L. Price

statements, bank records (including monthly statements, canceled checks, records of wire transfers, details of items deposited, and check registers), investor lists, title documents, writings, drawings, graphs, charts, photographs, audio and video recordings, computer records, computer files, databases and other data compilations, including any information stored by third parties or using cloud-based services, access codes, security codes, passwords, safe deposit keys, combinations, and all other instruments, papers, and electronic data or records of any kind or nature.

13. Within five (5) days of the entry of this Order, the Receivership Parties shall file with the Arbitration Tribunal and serve upon the Receiver a sworn statement, listing: (a) the identity, location and estimated value of all Receivership Assets, including contact information for the party in possession of all assets of such Receivership Party, held jointly or singly, including without limitation all assets held outside the territory of the United States; (b) all employees (and job titles thereof), other personnel, attorneys, accountants, and any other agents or contractors of the Receivership Parties; and (c) the amount and nature of all liabilities of such Receivership Party, including without limitation the names, addresses, and amounts of claims of all known creditors of the Receivership Parties. Such sworn statement shall include the names, addresses, telephone numbers, facsimile numbers, and e-mail addresses of the holders of any legal, equitable, or beneficial interests in such assets and the names, addresses, telephone numbers, facsimile numbers, and e-mail addresses of any financial institutions or other persons or entities holding such assets, along with the account numbers and balances. The sworn statements shall be accurate as of the date of this Order, shall be signed and verified as true and complete under penalty of perjury.

14. Within thirty (30) days of the entry of this Order, the Receivership Parties shall file with the Arbitration Tribunal and serve upon the Receiver a sworn statement and accounting, with

{01472/0000/00240920.1}    Page 6 of 20

Commented [SMA7]: This does not make sense to me. The Receivership Parties are defined as the Partnership Claimants and GP Claimants (see para 1 above) and the Receiver has been appointed to control them (see para 2 above). How can the Receivership Parties file anything unless the Receiver does it for them—because they are in receivership. Moreover if the Receiver is going to do this then shouldn't the Receiver be directed to file it?

Commented [SMA8]: Same issue as with para 13 a

complete documentation, covering the period from date of formation of the Receivership Parties

to the present:

A. Of all Receivership Assets, wherever located, held by or in the name of the Receivership Parties, or in which any of them, directly or indirectly, has or had any beneficial interest, or over which any of them maintained or maintains and/or exercised or exercises control, including, but not limited to: (a) all securities, investments, funds, real estate, automobiles, jewelry, digital assets, including but not limited to any assets contained in digital assets held at cryptocurrency exchanges, and other assets, stating the location of each; and (b) any and all accounts, including all funds held in such accounts, with any bank, brokerage, or other financial institution, or any other institution, including but not limited to casinos, held by, in the name of, or for the benefit of any of them, directly or indirectly, or over which any of them maintained or maintains and/or exercised or exercises any direct or indirect control, or in which any of them had or has a direct or indirect beneficial interest, including the account statements from each bank, brokerage, or other financial institution;

B. Identifying every account at every bank, brokerage, or other financial institution: (a) over which Receivership Parties have signatory authority; and (b) opened by, in the name of, or for the benefit of, or used by, the Receivership Parties;

C. Identifying all credit, bank, charge, debit or other deferred payment card issued to or used by each Receivership Parties, including but not limited to the issuing institution, the card or account number(s), all persons or entities to which a card was issued and with authority to use a card, the balance of each account and/or card as of the most recent billing statement, and all statements for the last twelve months;

D. Of all assets received by any of Receivership Parties from any person or entity, including the value, location, and disposition of any assets so received;

E. Of all funds received by the Receivership Parties, and each of them, in any way related, directly or indirectly, to the Partnership Claimants. The submission must clearly identify, among other things, all investors, lenders or partners, the interests they purchased or loans made, the date and amount of their investments or loans, and the current location of such funds;

F. Of all expenditures exceeding $1,000 made by any of Receivership Parties, including those made on their behalf by any person or entity in the preceding 12 month period; and

G. Of all transfers of assets made by any of Receivership Parties.

15.    Within five (5) days of the entry of this Order, the Receivership Parties shall provide to the Receiver copies of the Receivership Parties' federal income tax returns from formation through 2018 with all relevant and necessary underlying documentation.

> **Commented [SMA9]:** Same question as para 13 above.

16.    The Receivership Parties' past and/or present officers, directors, agents, attorneys, managers, shareholders, employees, accountants, debtors, creditors, managers and general and limited partners, and other appropriate persons or entities shall answer all questions which the Receiver may put to them and produce all documents as required by the Receiver regarding the business of the Receivership Parties, or any other matter relevant to the operation or administration of the receivership or the collection of funds due to the Receivership Parties.  The Receiver holds maintains and controls the attorney-client privilege and all other privileged of and for all Receivership Parties, and no information my be withheld from the Receiver on the basis that the information or communication was a priviledge communication of or to the Receivership Entities.  The Receiver has the exclusive right to determine if, when and under what circumstances to waive any privlilege of any Receivership Entity.

17.    The Receivership Parties and the persons or entities listed in the preceding paragraph are required to assist the Receiver in fulfilling his duties and obligations.  As such, they must respond promptly and truthfully to all requests for information and documents from the Receiver.  This cooperation and assistance shall include, but not be limited to: (a) providing any information or documents that the Receiver deems necessary or appropriate to the exercise of the Receiver's authority and the discharge of the Receiver's responsibilities under this Order; (b) providing any keys, including but not limited to physical, digital, and cryptographic keys, codes, device PINs, and passwords, including but not limited to account, encryption, email account, and computer passwords required to access any computer, electronic file, or telephonic data in any medium; (c) immediately advising all persons who owe money or currency of any kind to the

Receivership Parties that all debts should be paid directly to the Receiver; (d) providing full access to all Receivership Assets; and (e) maintaining and not wasting, damaging, disposing of, or transferring in any manner any Receivership Assets.

### IV.    Access to Books, Records and Accounts

18.    The Receiver is authorized to take immediate possession of all assets, bank accounts or other financial accounts, books, and records and all other documents or instruments relating to the Receivership Parties.  All persons and entities having control, custody, or possession of any Receivership Assets, including any financial institutions, are hereby directed to turn such property, including but not limited to all accounts, over to the Receiver.

19.    The Receivership Parties, as well as their agents, servants, employees, attorneys, any persons acting for or on behalf of the Receivership Parties, and any persons receiving notice of this Order by personal service, facsimile transmission, or otherwise, having possession of the property, business, books, records, accounts, or assets of the Receivership Parties are hereby directed to deliver the same to the Receiver, his agents and/or employees.

20.    All banks, brokerage firms, financial institutions, and other persons or entities which have possession, custody, or control of any assets or funds held by, in the name of, or for the benefit of, directly or indirectly, the Receivership Parties that receive actual notice of this Order by personal service, facsimile transmission, or otherwise shall:

      A.  Not liquidate, transfer, sell, convey, or otherwise transfer any assets, securities, funds, or accounts in the name of or for the benefit of the Receivership Parties except upon instructions from the Receiver;

      B.  Not exercise any form of set-off, alleged set-off, lien, or any form of self-help whatsoever, or refuse to transfer any funds or assets to the Receiver's control without the permission of this Arbitration Tribunal;

      C.  Within five (5) business days of receipt of that notice, file with this Arbitration Tribunal and serve on the Receiver and his counsel a certified statement setting forth, with respect to each such account or other asset, the balance in the account

{01472/0002/00240920.1}        Page 9 of 20

or description of the assets as of the close of business on the date of receipt of the notice; and,

D. Cooperate expeditiously in providing information and transferring funds, assets, and accounts to the Receiver or at the direction of the Receiver.

### V. Access to Real and Personal Property

21.     The Receiver is authorized but not directed to take immediate possession of all personal property of the Receivership Parties, wherever located, including but not limited to electronically stored information, computers, laptops, hard drives, external storage drives, and any other such memory, media or electronic storage devices, books, papers, data processing records, evidence of indebtedness, bank records and accounts, savings records and accounts, brokerage records and accounts, certificates of deposit, stocks, bonds, debentures, and other securities and investments, contracts, mortgages, furniture, office supplies, and equipment.

22.     The Receiver is authorized but not directed to take immediate possession of all real property of the Receivership Parties, wherever located, including but not limited to all ownership and leasehold interests and fixtures.  Upon receiving actual notice of this Order by personal service, facsimile transmission, or otherwise, all persons other than law enforcement officials acting within the course and scope of their official duties, are (without the express written permission of the Receiver) prohibited from (a) entering such premises; (b) removing anything from such premises; or, (c) destroying, concealing, or erasing anything on such premises.

23.     In order to execute the express and implied terms of this Order, the Receiver is authorized to change door locks to any premises.  The Receivership Parties, or any other person acting or purporting to act on their behalf, are ordered not to change the locks in any manner, nor to have duplicate keys made, nor shall they have keys in their possession during the term of the receivership.

{01472/0002/00240920.1}          Page 10 of 20

24.     The Receiver is authorized to open all mail, other than mail directed to the Receivership Parties or their general partners, and to inspect all mail opened prior to the entry of this Order, to determine whether items or information therein fall within the mandates of this Order.

25.     The Receiver is authorized to request similar assistance from any other federal, state, county, or civil law enforcement officer(s) or constable(s) of any jurisdiction.

**VI.     Notice to Third Parties**

26.     The Receiver shall promptly give notice of his appointment to all known officers, directors, agents, employees, shareholders, creditors, debtors, managers, and general and limited partners of the Receivership Parties, as the Receiver deems necessary or advisable to effectuate the operation of the receivership.

27.     All persons and entities owing any obligation, debt, or distribution with respect to an ownership interest to any Receivership Party shall, until further ordered by this arbitration, pay all such obligations in accordance with the terms thereof to the Receiver, and its receipt for such payments shall have the same force and effect as if the Receivership Defendant had received such payment.

28.     In furtherance of his responsibilities in this matter, the Receiver is authorized to communicate with, and/or serve this Order upon, any person, entity, or government office that he deems appropriate to inform them of the status of this matter and/or the financial condition of the Receivership Estate.   All government offices which maintain public files of security interests in real and personal property shall, consistent with such office's applicable procedures, record this Order upon the request of the Receiver.

29.     The Receiver is authorized to instruct the United States Postmaster to hold and/or reroute mail which is related, directly or indirectly, to the business, operations, or activities of any

of the Receivership Parties (the "Receiver's Mail"), including all mail addressed to, or for the benefit of, the Receivership Parties. The Postmaster shall not comply with, and shall immediately report to the Receiver, any change of address or other instruction given by anyone other than the Receiver concerning the Receiver's Mail. The Receivership Parties shall not open any of the Receiver's Mail and shall immediately turn over such mail, regardless of when received, to the Receiver. The foregoing instructions shall apply to any proprietor, whether individual or entity, of any private mail box, depository, business or service, or mail courier or delivery service, owned, rented, or used by the Receivership Parties. No one other than Receiver shall open a new mailbox regarding the Receivership Parties, or take any steps or make any arrangements to receive mail in contravention of this Order, whether through the U.S. mail, a private mail depository, or courier service.

30. Subject to payment for services provided, any entity furnishing any utilities or related services to the Receivership Parties shall maintain such service and transfer any such accounts to the Receiver unless instructed to the contrary by the Receiver.

## VII. Injunction Against Interference with Receiver

31. The Receivership Parties and all persons receiving notice of this Order by personal service, facsimile, or otherwise, are hereby restrained and enjoined from directly or indirectly taking any action or causing any action to be taken, without the express written agreement of the Receiver, which would:

> A. Interfere with the Receiver's efforts to take control, possession, or management of any Receivership Assets; such prohibited actions include but are not limited to, using self-help or executing or issuing or causing the execution or issuance of any court attachment, subpoena, replevin, execution, or other process for the purpose of impounding or taking possession of or interfering with or creating or enforcing a lien upon any Receivership Assets;

> **Commented [RM10]:** I think we should include this because if it is not part of this Order, the state court will have to enter a separate order making it applicable to third parties. We want the state court to just confirm this Order in its entirety. See para 33.

> **Commented [GM11]:** Per Ray's suggestion, do we only make this applicable to World Class in this order and not third parties for now? Then we have this order confirmed by the District Court to make it enforceable against third parties with these same provisions?

> **Commented [HK12]:** (RCC) Agree with Rhonda.

B. Hinder, obstruct or otherwise interfere with the Receiver in the performance of his duties; such prohibited actions include but are not limited to, concealing, destroying, or altering records or information;

C. Dissipate or otherwise diminish the value of any Receivership Assets; such prohibited actions include but are not limited to, releasing claims or disposing, transferring, exchanging, assigning or in any way conveying any Receivership Assets, enforcing judgments, assessments or claims against any Receivership Assets or any Receivership Defendant, attempting to modify, cancel, terminate, call, extinguish, revoke or accelerate (the due date), of any lease, loan, mortgage, indebtedness, security agreement or other agreement executed by any Receivership Defendant or which otherwise affects any Receivership Assets; or,

D. Transact any of the business of the Receivership Parties or transferring any Receivership Assets to anyone other than the Receiver;

E. Destroy, secret, deface, transfer, or otherwise alter or dispose of any documents of or pertaining to the Receivership Parties and to the extent any such documents are no longer in existence, fail to disclose the nature and contents of such documents and how, when, and by whom such documents were caused to no longer be in existence;

F. Fail to notify the Receiver of any Receivership Assets, including accounts constituting Receivership Assets held in any name other than the name of a Receivership Defendant, or by any person other than the Receivership Parties, or fail to provide any assistance or information requested by the Receiver in connection with obtaining possession, custody, or control of such Receivership Assets;

G. Refuse to cooperate with the Receiver or the Receiver's duly authorized agents in the exercise of their powers, duties, or authority under any order of this Arbitration Tribunal;

H. Interfere with or harass the Receiver, or interfere in any manner with the exclusive jurisdiction of this Arbitration Tribunal over the Receivership Estate; or

I. Take any action or file bankruptcy proceedings under Title II of the U.S. Code. The right to file a bankruptcy proceeding or any other litigation involving the Receivership Parties is expressly and solely delegated to the Receiver.

32. Either The Receiver or Respondent the Mittle Foundation, or both, are is authorized, but not required, to seek confirmation of this Order in the District Court of Travis

County, Texas. Nothwithstanding confirmation of this Order by any other tribunal, this Arbitration Tribunal shall retain exclusive jurisdiction to enforce the terms of this Order.

33. The Receivership Parties shall cooperate with and assist the Receiver in the performance of his duties.

### VIII. Managing Assets

34. The Receiver shall establish one or more custodial accounts at a federally insured bank to receive and hold all cash equivalent Receivership Assets (the "Receivership Funds").

35. The Receiver's deposit account shall be entitled "Receiver's Account, Estate of [Name of Receivership Defendant]" together with the name of the action, or a title to that effect.

36. Without further Order of this Arbitration Tribunal, the Receiver may not liquidate or otherwise dispose of Receivership Assets, including real estate, other than in the ordinary course of business if the fair market value is less than $25,000.

37. The Receiver is authorized to use the Receivership Assets and proceeds thereof to pay debts and expenses of Receivership Parties that (i) have accrued prior to or during the receivership and (ii) in the sole discretion of the Receiver are essential or necessary to the operations of the Receivership Parties.

38. The Receiver's duties shall include, using reasonable efforts, identifying, marshaling, taking custody of, and preserving the value of the Receivership Assets and identifying appropriate dispositions of the same.

39. Upon further Order pursuant to such procedures as may be required by this Arbitration Tribunal and additional authority such as 28 U.S.C. §§ 2001 and 2004, the Receiver will be authorized to sell and transfer clear title to, all real property in the Receivership Estate.

40. The Receiver is authorized to take all actions he deems necessary in his sole judgment to manage or maintain business operations of the Receivership Estate, including making

{01472/0002/02240920.1}          Page 14 of 20

payments to creditors, employees, and agents of the Receivership Estate and communicating with vendors, investors, governmental and regulatory authorities, and others, as appropriate.

### IX. **Bankruptcy Filing**

41.     The Receiver is granted the sole and exclusive right to file voluntary petitions for relief under Title II of the United States Code (the "Bankruptcy Code") for the Receivership Parties, or any of them. If a Receivership Party is placed in bankruptcy proceedings, the Receiver may become, and may be empowered to operate each of the Receivership Estate as, a debtor in possession. In such a situation, the Receiver shall have all of the powers and duties as provided a debtor in possession under the Bankruptcy Code to the exclusion of any other person or entity.

> **Commented [SMA13]:** This is not enforceable. You cannot deny another party who has the right to seek protection of the bankruptcy court the ability to file for protection.

42.     The provisions of this Section IX bar any person or entity, other than the Receiver, from placing any of the Receivership Parties in bankruptcy proceedings.

> **Commented [GM14]:** Include even though we don't think it's enforceable?
>
> **Commented [HK15]:** (RCC) Sure

### X. **Liability of Receiver**

43.     Until further Order, the Receiver shall not be required to post bond or give an undertaking of any type in connection with his fiduciary obligations in this matter.

44.     The Receiver may choose, engage and employ attorneys, accountants, appraisers, and any other independent contractors and technical specialists, including, but not limited to, real estate agents, forensic experts, property managers, and auctioneers (collectively, "Retained Personnel") as the Receiver deems advisable or necessary in the performance of the Receiver's duties and responsibilities under the authority granted by this Order. The Receiver and his Retained Personnel, acting within scope of such agency, are entitled to rely on all outstanding rules of law and Orders of this Arbitration Tribunal and shall not be liable to anyone for their own good-faith compliance with any order, rule, law, judgment, or decree. In no event shall the Receiver or Retained Personnel be liable to anyone for their good-faith compliance with their duties and responsibilities as Receiver or Retained Personnel, including compliance with

{01472/0002/00240920.1}          Page 15 of 20

"Preservation/Liquidation ~~during the pendency of this litigation (the "Preservation~~ Plan") [Is this applicable in this matter?].

> **Commented [  16]:** (RCC) I'm not sure. The plan is going to be to sell the property as soon as reasonably practicable.

53.    Within 60 days of the entry date of this Order the Receiver shall file the Preservation/Liquidation Plan in the above-captioned action, with service copies to counsel of record, to allow this Arbitration Tribunal to evaluate the best course of action for the preservation and liquidation of assets.

54.    Within thirty (30) days after the end of each calendar quarter, the Receiver shall file and serve a full report and accounting of each Receivership Estate (the "Quarterly Status Report"), reflecting (to the best of the Receiver's knowledge as of the period covered by the report) the existence, value, and location of all Receivership Assets, and of the extent of liabilities, both those claimed to exist by others and those the Receiver believes to be legal obligations of the Receivership Estate.

55.    The Quarterly Status Report shall contain the following:

   A. A summary of the operations of the Receiver;

   B. The amount of cash on hand, the amount and nature of accrued administrative expenses, and the amount of unencumbered funds in the estate;

   C. A schedule of all the Receiver's receipts and disbursements (attached as Exhibit A to the Quarterly Status Report), with one column for the quarterly period covered and a second column for the entire duration of the receivership;

   D. A description of all known Receivership Assets, including approximate or actual valuations, anticipated or proposed dispositions, and reasons for retaining assets where no disposition is intended;

   E. A list of all known creditors with their addresses and the amounts of their claims;

   F. The Receiver's recommendations for a continuation or discontinuation of the receivership and the reasons for the recommendations.

   F.G. Expenses incurred by the Receiver, including his own fees and all professional fees, during that quarter.

> **Formatted:** Left, Indent: Left:  0.5",  No bullets or numbering

### XIII.     Fees, Expenses and Accountings

56.     The Receiver need not obtain approval prior to the disbursement of Receivership Funds for expenses in the ordinary course of the administration and operation of the receivership. Further, prior approval is not required for payments of applicable federal, state, or local taxes.

57.     The Receiver is authorized to solicit and retain persons and entities ("Retained Personnel") to assist him in carrying out the duties and responsibilities described in this Order. The Receiver is specifically authorized to retain Streusand, Landon, Ozburn & Lemmon, LLP to serve as his counsel.

58.     The Receiver and Retained Personnel are entitled to reasonable compensation and expense reimbursement on a monthly basis from the Receivership Estate without prior approval, but with full quarterly disclosure to the parties to the Arbitration.

59.     Receiver shall be entitled to an initial minimum guaranteed fee of $40,000.00 (the "Guaranteed Fee").  Further compensation will be commission-based, as follows:

(a) Receiver shall be due 1.5% of all amounts paid to debt holders; and

(b) Receiver shall be due 3.0% of all amounts paid to equity holders.

Such compensation will be due and payable upon the closing of any sale or refinancing, and if no sale, refinancing or other transaction occurs, Receiver shall be due compensation based upon the appraised fair-market value of all property retained by equity holders at the conclusion of the matter.

60.     Mitte has agreed to advance up to a total amount of $150,000.00 to cover the Guaranteed Fee to the Receiver and the cost of Receiver's counsel.  Mitte will also pay for, in addition to the $150,000.00 sum referenced above, (a) an updated appraisal for each of the subject

| Commented [HK17]: (RCC) This needs to be as incurred, not the entire $150K up front. |

real properties as directed by the Receiver, and (b) the premium costs for the bond ordered by this

Arbitration Tribunal, if any.

> **Commented [HK18]:** (RCC) I don't have authorization for this.

61.     In return for advancing such funds to preserve, protect, investigate, value and
otherwise administer assets of the Receivership Parties, for the benefit of all stakeholders, Mitte
shall have an administrative priority claim in the Receivership Estate for repayment of such
amounts after payment to the Receiver and Retained Personnel, and before distributions to any
equity holders.

62.     At the close of the Receivership, the Receiver shall submit a Final Accounting, as
well as the Receiver's final application for compensation and expense reimbursement.

63.     All such fees and expenses of the Receiver, including all amounts due to the
Receiver or Retained Personnel, shall be accorded priority to the maximum extent provided by
applicable law.

64.     Further, this Order shall constitute a subordinate lien upon the Receivership Assets
including, but not limited to, any real property owned by the Receivership Parties to secure the
compensation of Receiver in accordance with this Order.  Receiver is authorized to provide notice
of and perfect such lien as required by applicable law.

> **Commented [HK19]:** (RCC) If we're going to do this, we need to include Mitte's advances. YES we do.

IT IS SO ORDERED, this ___ day of _____, 2019.

_____

Unofficial copy Travis Co. District Clerk Velva L. Price

WCPC

09/24/19
(3:15 P)

P/c w/ Ray Chester

— 10/4 still hearing date; should hold
but no guarantee

— new lawyer for WCPC = Adam Gray
King Spaulding

— Mitte BOD
• will pay hourly if have to
• strongly prefer % in GSM + Lemmas
• will front expenses (appraisal, etc.)
• only paying 6~11% + 15% of total fee
so I care as much about %, but
feel it should be a single-digit #
• 3/c *100 mm ⟩ Values per Mitte
'lr    40 mm

— file amended motion Friday (Monday) I
inclined to put comp in motion, but
hold on hearing, just need to give
other side from notice of issue

(6 mins)

RCVR001083

## Mark Ralston

| | |
|---|---|
| **From:** | Mark Ralston |
| **Sent:** | Monday, August 10, 2020 8:53 AM |
| **To:** | 'Stephen Lemmon' |
| **Cc:** | Rhonda Mates; Gregory S. Milligan; Kelli Rangel |
| **Subject:** | RE: WC 1st and Trinity, WC 3rd and Congress [IWOV-Legal.FID105226] |

Stephen,

Yes, the Debtors oppose having the Receiver's Motion to Dismiss heard on an expedited basis. As an initial matter, you have not even stated good cause to do. *See* L. Rule 9014(e). And, frankly, I am unaware of any facts in this matter that would constitute such cause. Additionally, given the several misstatements and misleading allegations asserted and seriousness of the scope of relief sought by the Receiver, the notice period required under the Local Rules will be necessary to allow the Debtor to appropriately respond, including presenting evidence or witnesses as may be necessary.

Further, the Debtors believe that the Local Rules require the Receiver to also confer with other significant parties in interest as a prerequisite to seeking an expedited hearing on his motion—at minimum, the secured lenders to each of the limited partnerships.

I am open to working with you regarding scheduling a hearing date falling after the conclusion of the notice period provided under the Local Rules. Please provide your availability for the same. Please also be aware that I will be on a long-planned family vacation to Arizona from and including Friday, August 14 to August 22.

All the best,

**Mark H. Ralston** | Attorney
FISHMAN | JACKSON | RONQUILLO PLLC
13155 Noel Road, Suite 700 | Dallas, Texas 75240
Direct Dial: 972.419.5544 |  Fax: 972.419.5501
Email: mralston@fjrpllc.com



CONFIDENTIALITY NOTICE:  This e-mail and any attachments are for the exclusive and confidential use of the intended recipient.  If you are not the intended recipient, please do not read, distribute, or take action in reliance upon this message.  If you have received this in error, please notify us immediately by return e-mail and promptly delete this message and its attachments from your computer system.  We do not waive client-attorney or work product privilege by the transmission of this message.

**From:** Stephen Lemmon <Lemmon@slollp.com>
**Sent:** Friday, August 7, 2020 7:24 PM
**To:** Mark Ralston <mralston@fjrpllc.com>
**Cc:** Rhonda Mates <Mates@slollp.com>; Gregory S. Milligan <gmilligan@harneypartners.com>; Kelli Rangel <Rangel@slollp.com>
**Subject:** WC 1st and Trinity, WC 3rd and Congress

Mark:

On behalf of the Receiver, we are filing  motions to dismiss all four of the bankruptcies, or, alternatively, to have the Receiver administer the bankruptcies of the limited partnerships.

We are also filing a motion for expedited consideration, asking the Court to hold a hearing on or before August 17.

Are you opposed to the Motion to Expedite?  Are there any dates next week we should tell the court you are unavailable?

Thanks.

Stephen Lemmon

**STREUSAND | LANDON | OZBURN | LEMMON** LLP
Spyglass Point | 1801 South MoPac Expressway | Suite 320 | Austin, Texas 78746
(d) (512) 220-2688 | (o) (512) 236-9900 | (f) (512) 236-9904
lemmon@slollp.com | www.slollp.com

This electronic message contains information from the law firm of Streusand, Landon, Ozburn & Lemmon, LLP.  The contents may be privileged and confidential and are intended for the use of the intended addressee(s) only.  If you are not an intended addressee, note that any disclosure, copying, distribution, or use of the contents of this message is prohibited.  If you received this e-mail in error, please delete it and all copies and contact me at lemmon@slollp.com and/or (512) 220-2688.  Thank you.

**IRS Circular 230 Disclosure**:  To ensure compliance with requirements imposed by the IRS, we inform you that any U.S. Federal tax advice contained in this communication, (including any attachments) is not intended to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing, or recommending to another party any transaction or matter addressed herein.