## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| WC 1st AND TRINITY LP | § | CASE NO. 20-10885 |
| | § | |
| WC 3RD AND CONGRESS LP | § | CASE NO. 20-10887 |
| | § | |
| WC 1st AND TRINITY GP LLC | § | CASE NO. 20-10886 |
| | § | |
| WC 3RD AND CONGRESS GP LLC, | § | CASE NO. 20-10888 |
| | § | |
| DEBTORS. | § | CHAPTER 11 |

## LP DEBTORS' RESPONSE IN OPPOSITION TO MOTIONS TO DISMISS
## <u>REGARDING AUTHORITY TO FILE CHAPTER 11 CASES</u>

# Table of Contents

I.    SUMMARY OF THE ARGUMENT ........................................................................................1

II.    FACTUAL AND PROCEDURAL BACKGROUND ............................................................. 3

    A.    Trinity Partnership Operations and Governance ....................................................... 3

    B.    Congress Partnership Operations and Governance.................................................... 5

    C.    Events Leading to the Bankruptcy Filings ................................................................6

III.    ARGUMENT AND AUTHORITIES .................................................................................... 9

    A.    The LP Debtors Had Authority to File the Bankruptcy Cases. ................................... 9

        1.    State law governs the question of who has authority to file. .................................. 9

        2.    The manager of the LP Debtors' General Partners authorized the LP Debtors' filings. ........................................................................................................................10

        3.    A state-court receivership order cannot deny a corporate debtor access to a federal bankruptcy forum. ................................................................................... 11

        4.    The state-court Receivership Order entered before the petition date did not divest the General Partners of their power to authorize the filing of the LP Debtors' petitions for relief. ..................................................................................16

        5.    Movants' cited authorities are inapposite. ............................................................18

IV.    CONCLUSION ..................................................................................................................21

**To the Honorable Tony M. Davis, United States Bankruptcy Judge:**

The LP Debtors oppose the Motions to Dismiss, and in support of this opposition respectfully state as follows:

## I.    SUMMARY OF THE ARGUMENT

1.    The Movants argue that the LP Debtors' Chapter 11 cases should be dismissed on the grounds that the manager of the general partners that authorized the voluntary petitions for relief initiating the bankruptcy cases lacked the authority to do so because a state-court receiver, who had been appointed over the limited partnerships, was the only person who could authorize such filings.[1]

2.    The Movants are wrong. State law governs the question of who may authorize the filing of a bankruptcy petition for a corporate debtor.[2] The LP Debtors are Texas limited partnerships, so Texas law applies to the question of who may authorize the filing of their bankruptcy petitions. Under Texas law, the powers of a general partner may be enumerated in a partnership agreement.[3] Both LP Debtors are governed by partnership agreements that bestow on their respective general partner a broad grant of authority to undertake all actions which a general partner may take under Texas law in managing the affairs of a

---

[1] The Movants also argue that the petitions were not filed in good faith, but at the Court's direction this response of the LP Debtors addresses only the question of authority to file and not the good-faith issue, which the parties will address at a later date to be determined by the Court.

[2] Although the Bankruptcy Code defines who *qualifies* to be a debtor, state law addresses who may *authorize* the filing of a debtor's bankruptcy petition. *See Price v. Gurney*, 324 U.S. 100, 106 (1945).

[3] In the absence of a partnership agreement, a general partner's powers would be governed by the applicable provisions of the Texas Business Organizations Code (the "**TBOC**"). *See* TBOC § 153.152(a)(1).

limited partnership.[4] The partnership agreements also grant their respective general partner "sole and absolute discretion" to make decisions on behalf of the partnerships and specifically deny the limited partners "any right or power to take part in the management or control" of the partnerships.[5]

3.      That a receivership order entered by a state court also grants the receiver the power to authorize a bankruptcy filing for the entities over which the receiver has been placed does not, and cannot, divest the general partners of that authorization. Courts examining this issue overwhelmingly support the well-settled principle that a state-court receivership commenced before the bankruptcy petitions were filed is not an impediment to the general partners' authority to commence the filings, even where a receivership order purports to vest that authority exclusively in the receiver.[6] Such provisions in a state-court receivership order cannot deprive a debtor of the bankruptcy protections Congress has provided in enacting the Bankruptcy Code under Article I, Section 8, Clause 4 of the United States Constitution. As a matter of law, the fact that a receiver was in place before the petition date cannot prevent the LP Debtors' general partners, through their manager, from exercising the LP Debtors' rights to access the federal bankruptcy system.

4.      The state-court receivership order did not remove the general partners from the partnerships. The state court receivership order did not transfer the ownership of the

---

[4] *See* Partnership Agreements, § 5.1(a), attached hereto as Exhibits A & B.

[5] *See* Partnership Agreements, § 14.12, attached hereto as Exhibits A & B.

[6] The few cases cited by Movants do not contradict these well-settled principles but merely support the uncontroversial assertion that a receiver can, if granted the power in a receivership order, authorize a bankruptcy filing for an entity over which the receiver was appointed.

partnerships to the receiver. The state court receivership did not transfer the general partners' ownership interests in the LP Debtors to the receiver, nor place the receiver in control of the general partners (the receivership was placed over certain management of the limited partnerships, but not over the general partners or limited partners who comprise the partnerships). For these reasons, the legal status of the general partners under state law, including their power to authorize bankruptcy filings on behalf of the partnerships, remains undisturbed. The filings of the LP Debtor's bankruptcy cases were duly authorized and, therefore, should not be dismissed.

## II. FACTUAL AND PROCEDURAL BACKGROUND

### A. *Trinity Partnership Operations and Governance*

5.     Debtor WC 1st and Trinity, LP, a Texas limited partnership ("**Trinity Partnership**") is an investment entity organized "[to] acquire, own, hold, sell, assign, transfer, operate, lease, mortgage, pledge and otherwise deal with [ ] certain parcel[s] of real property."[7] The assets of the Trinity Partnership consist primarily of real property consisting of approximately 40,934 square feet of land located at 401 E. Cesar Chavez Street in downtown Austin. Since the acquisition of the real property in 2012, the general partner of the Trinity Partnership has executed a successful buy-and-hold investment strategy for the Trinity Partnership, and the value of the Trinity Partnership's assets has appreciated significantly, and well in excess of its annual carrying costs, to date.

6.     The Trinity Partnership and its partners are bound by the Agreement of the Limited Partnership of WC 1st and Trinity, LP that became effective on July 2, 2012 (the

---

[7] *See* Trinity Partnership Agreement, § 1.3(a)(i), attached hereto as Exhibit A.

"**Trinity Partnership Agreement**"), setting forth the rights and obligations of all partners, including the rights an obligations of the general partner, WC 1st and Trinity GP, LLC, a Delaware limited liability company ("**Trinity GP**"). By the express terms of the Trinity Partnership Agreement, only the Trinity GP may direct the business and affairs of the Trinity Limited Partnership (Section 5.1(a)). Further, Section 14.12 of the Trinity Partnership Agreement provides: "Except as otherwise provided in this Agreement, all actions which any General Partner may take and all determinations which any General Partner may make pursuant to this Agreement may be taken and made at the ***sole and absolute discretion*** of such General Partner." (Emphasis added.) And Section 6.1 of the agreement specifically divests the limited partners of any involvement in the management of the partnership's business: "The Limited Partners shall not have any right or power to take part in the management or control of the Partnership or its business and affairs or to act for or bind the Partnership in any way." Finally, Section 5.3 of the Trinity Partnership Agreement provides the only exceptions to the agreement's broad grant of sole and exclusive authority to the general partner, requiring the general partner to seek the unanimous consent of the limited partners in only three circumstances, none of which include the filing of bankruptcy petitions on behalf of the partnership.

7.     Nate Paul is the manager of the Trinity GP, which has a 1.0% general partner ownership stake in the Trinity Partnership. Mr. Paul, through other entities, also beneficially owns a 49.5% Class B limited partnership interest, and a 33.6% class A limited partnership interest, for a total 83.16% super majority limited partnership interest stake in the Trinity Partnership.

8.      The Roy F. and Joann Cole Mitte Foundation ("**Mitte**") currently holds only a 15.84% minority limited partnership interest stake in the Trinity Partnership. The Mitte Foundation, which has something of a checkered history,[8] is one of the Movants seeking dismissal of the LP Debtors' bankruptcy cases.

### B.  Congress Partnership Operations and Governance

9.      WC 3rd and Congress, LP, a Texas limited partnership ("**Congress Partnership**") is an investment entity organized "[to] acquire, own, hold, sell, assign, transfer, operate, lease, mortgage, pledge and otherwise deal with [ ] certain parcel[s] of real property."[9] The assets of the Congress Partnership consist primarily of real property consisting of 1.24-acre parcel of land made up of three contiguous tracts, located at 201 Colorado Street, 203 Colorado Street, and the intersection of 3rd Street and Congress Avenue in downtown Austin. Similar to the Trinity Partnership, since the acquisition of the real property in 2012, the Congress General Partner has executed a successful buy-and-hold investment strategy for the Congress Partnership and the value of the Congress Partnership's assets has appreciated significantly, and well in excess of its annual carrying costs, to date.

10.     The Congress Limited Partnership and its partners are bound by the Agreement of the Limited Partnership of WC 3rd and Congress, LP that became effective on December 28, 2012 (the "**Congress Partnership Agreement**" and, together with the Trinity Partnership Agreement, the "**Partnership Agreements**"), setting forth the rights

---

[8] For details, see the LP Debtors' Response to the Motion to Expedite [Docket No. 14].

[9] *See* Congress Partnership Agreement § 1.3(a)(i), attached hereto as Exhibit B.

LP Debtors' Response in Opposition to Motions to Dismiss Regarding Authority to File          5

and obligations of all partners, including the rights and obligations of the general partner, WC 3rd and Congress GP, LLC, a Delaware limited liability company ("**Congress GP**" and, together with the Trinity GP, the "**General Partners**"). The Congress Partnership Agreement contains substantially identical terms regarding the relative powers of the general and limited partners. *See* Congress Partnership Agreement, §§ 5.1, 6.1, & 14.12.

11.     Nate Paul is the manager of the Congress GP, which has a 1% general partner ownership stake in the Trinity Partnership. Mr. Paul, through other entities, also beneficially owns a 49.5% Class B limited partnership interests, and a 41.66% class A limited partnership interest, for a total 91.16% super majority limited partnership interest stake in the Congress Partnership.

12.     The Mitte Foundation currently holds only a 6.83% minority limited partnership interest in the Congress Partnership. The Mitte Foundation is apparently currently led by R.J. Mitte.

### C.  *Events Leading to the Bankruptcy Filings*

13.     In 2018, the Limited Partnerships and Mitte were engaged in a dispute relating to the Limited Partnerships' concerns that agents of Mitte were interfering with the management and affairs of the Limited Partnerships in breach of the Partnership Agreements, and in particular, breaches of the limited partner prohibitions in Section 6.1. In the course of this dispute, Mitte requested access to the Limited Partnerships' books and records through suit assigned Case No. D-1-GN-18-007636 in Travis County District Court, seeking injunctive relief (the "**State Court Case**").

14.     In February 2019, the Limited Partnerships (and General Partners) initiated arbitration proceedings, in accordance with a dispute resolution process outlined in the Partnership Agreements, against Mitte for its multiple and continued breaches of Section 6.1 of the Partnership Agreements, among others. The matter was assigned Arbitration Case No. 01-19-000-5347 (the "**Arbitration Proceeding**").

15.     In the course of the Arbitration Proceeding, and despite the lack of authority to do so, Mitte sought the appointment of a receiver over the Limited Partnerships. At an October 4, 2019 hearing in the Arbitration Proceeding, Mitte put forward Gregory S. Milligan as a "neutral," outside, and disinterested party who would serve as the receiver. Mitte did not, however, disclose the prior relationship between Milligan and his agents and Mitte and its agents, and Mitte disingenuously proffered Milligan as a "neutral." In reality, Milligan had been conferring and conspiring with Mitte as to how a limited partner with limited rights could use Milligan to effectuate a sale of the Limited Partnerships' assets through receivership, thereby attempting to achieve a result unavailable to Mitte under the Partnership Agreements and under state law.

16.     The discussions and negotiations with Milligan began as early as August 2019, two months before the hearings on the appointment of a receiver. In the course of those negotiations, which only became known to the Limited Partnerships upon service of a subpoena duces tecum to Milligan in December 2019, Milligan agreed to engage with Mitte in its scheme to obtain the appointment of a receiver, but only in exchange for an exorbitant contingency fee for his services in which he had the opportunity to obtain up to a nearly $4 million fee from a sale of the Partnership assets.

17.     On October 11, 2019, without the benefit of this and other background information reflecting that Milligan was by no means "neutral," or disinterested, and without knowing he had been selected by Mitte to attempt to force a sale under the guise of neutrality—the arbitrator appointed Milligan to be receiver for the Limited Partnerships (creating the "**Arbitration Receivership**") on the basis of an unfounded claim that there was an imminent risk of loss, harm, or injury to the Partnerships' assets. Mitte then sought to confirm this arbitration order, but the order was stayed on mandamus by the Third Court of Appeals.

18.     With Milligan facing the loss of a hefty payday, and Mitte relegated again to its minority limited partnership position, Milligan and Mitte went back to the drawing board to find a way around the mandamus stay. Shortly after the stay order, Mitte filed a new Motion to Appoint Receiver directly in the Travis County District Court, and the entry of that Order occurred on December 10, 2019 (the "**Receivership Order**").

19.     The Limited Partnerships appealed the Receivership Order, perfecting their appeal, and were granted a temporary stay of enforcement of the Receivership Order from the Court of Appeals. Though the Limited Partnerships were afforded the opportunity to post a supersedeas bond to continue the stay of enforcement, for a variety of reasons the Limited Partnerships were unable to post the supersedeas bond by the April 21, 2020 deadline set by the state court. On May 29, 2020, the Court of Appeals lifted its temporary stay of enforcement of the Receivership Order, though the appeal of the order itself remained in place.

20.    As a result of various issues arising from the foregoing, including the appointment of a receiver, the secured loans for each of the Limited Partnerships were placed into default. Additionally, the ongoing litigation with Mitte and Milligan has placed a financial burden on the Limited Partnerships. On August 5, 2020, faced with a deteriorating financial condition, including accelerated loan obligations, and an inability to make debt service payments, property tax payments and other creditor payments as they came due, and the prospects of further financial distress, the General Partners filed voluntary Chapter 11 petitions in this Court to enable the Limited Partnerships to reorganize their businesses as going concerns and maximize the distributable value to their creditors.

## III.  ARGUMENT AND AUTHORITIES

### A.  *The LP Debtors Had Authority to File the Bankruptcy Cases.*

21.    On August 5, 2020, Nate Paul, as Manager of the Trinity GP and Congress GP signed voluntary petitions for chapter 11 with the authorization of written consents in accordance with the Partnership Agreements. The sole question the Court has asked the parties to brief was whether this authorization is legally effective in light of the fact that the Receivership Order purports to vest such authority solely and exclusively in the hands of the receiver. It is.

### 1.  **State law governs the question of who has authority to file.**

22.    The Bankruptcy Code provides that a "person" with a "place of business, or property, in the United States" may be a debtor. 11 U.S.C. § 109. The Bankruptcy Code defines "person" to include a "partnership." 11 U.S.C. § 101(41). The Bankruptcy Code,

however, does not provide guidance on who in a limited partnership possesses the authority to effectuate the filing of a bankruptcy petition.

23.     That question is governed by state law. *See Price v. Gurney*, 324 U.S. 100, 106 (1945); *Franchise Servs. of N. Am. v. United States Trs. (In re Franchise Servs. of N. Am.)*, 891 F.3d 198, 206 (5th Cir. 2018) ("State law thus determines who has the authority to file a voluntary petition on behalf of the corporation."); *In re Corporate & Leisure Event Prods.*, 351 B.R. 724, 731 n.25 (Bankr. D. Ariz. 2006) ("'[t]he Bankruptcy Code does not establish what the internal requisites are for the initiation of a voluntary corporate bankruptcy proceeding.'") (internal citation omitted).

24.     With respect to limited partnerships, Texas law provides that, with some enumerated exceptions not applicable here, "a partnership agreement governs the relations of the partners and between the partners and the partnership." *See* TBOC § 152.002(a).

### 2.    The manager of the LP Debtors' General Partners authorized the LP Debtors' filings.

25.     Both Partnership Agreements provide that the filing of a bankruptcy petition on behalf of the partnerships may occur if authorized by the general partner. As described in paragraph 2 above, the Trinity GP and Congress GP had "sole and absolute discretion" to make the decision to file bankruptcy on behalf of the limited partnerships. *See* Partnership Agreements, §§ 5.1(a); 5.3; 6.1; & 14.12.

26.     Section 5.3 of each Partnership Agreement enumerates the specific restrictions on the general partner's broad general powers to manage the partnership in its sole and absolute discretion, including, for example, a prohibition on the general partner's ability to sell substantially all the partnership's assets without consent from a super

majority of the limited partners. Notably absent from section 5.3 (and the entire partnership agreement), however, is any restriction on the general partner's sole and absolute discretion to authorize bankruptcy filings for the partnerships.

27.     Under the Partnership Agreements, the agreement through which authorization is granted to the General Partners under Texas state law, the filing of the bankruptcy cases by the General Partners was duly authorized. Given that the Receivership Order did not transfer the ownership of the partnerships to the receiver, remove the General Partners, nor convey the ownership of the General Partners to the receiver, the General Partners retained their authorization to file the petitions on behalf of the partnerships by the powers conferred upon general partners by the Texas BOC.

### 3.     A state-court receivership order cannot deny a corporate debtor access to a federal bankruptcy forum.

28.     A Texas state-court receivership does not divest the authority of a general partner to file Chapter 11 for a limited partnership unless the state-court receivership order specifically transfers the ownership of the general partner to the receiver or specifically removes the general partner. Any holding to the contrary would permit the state court to interfere with the exclusive federal jurisdiction of the bankruptcy courts. *See In re Watts*, 190 U.S. 1 (1903).

29.     The fact that the Receivership Order was entered did not—and cannot— divest the LP Debtors of their right to access the bankruptcy protections through a bankruptcy authorized by the General Partner, as Congress has provided in enacting the Bankruptcy Code under Article I, Section 8, Clause 4 of the United States Constitution. Indeed, the "[o]verwhelming authority holds that, generally, corporate officers and

directors may enact a resolution authorizing bankruptcy despite a receiver having been appointed." *In re Kreisers, Inc.*, 112 B.R. 996, 1000 (Bankr. D.S.D. 1990) (citing *Jordan v. Indep. Energy Corp.*, 446 F. Supp. 516, 524 (N.D. Tex. 1978) (holding that "blanket receivership injunctions" cannot serve as a bar to a debtor's access to the federal bankruptcy system)); *In re S & S Liquor Mart, Inc.*, 52 B.R. 226, 227 (Bankr. D.R.I. 1985) (stating that "it is fundamental that a state court receivership proceeding may not operate to deny a corporate debtor access to the federal bankruptcy courts"); *In re Donaldson Ford, Inc.*, 19 B.R. 425, 430 (Bankr. N.D. Ohio 1982) ("The inability of a state or federal court to enjoin the filing of a voluntary or involuntary petition under the Bankruptcy Act derives from the Debtor's constitutional right to seek relief in the federal courts under the provisions of the Bankruptcy Act.")).

30.     Summarizing this "overwhelming authority," the court in *Kreisers* explained that "[n]either a state court injunction nor the pendency of a state receivership can bar the filing of an otherwise permitted bankruptcy due to the grant of the exclusive bankruptcy jurisdiction to the federal courts and the constitutional principle of supremacy." *Kreisers*, 112 B.R. at 1000 (citing *United States v. Royal Bus. Funds Corp.*, 29 B.R. 777 (S.D.N.Y. 1983) (distinguishing between federal receiverships and state receiverships, and acknowledging that the rule for the latter is that "the pendency of a receivership does not preclude a corporation from filing a bankruptcy petition.")).[10]

---

[10] *See also In re Mt. Forest Fur Farms*, 103 F.2d 69, 71 (6th Cir. 1939) ("The fact that a state receivership existed is not controlling"); *In re Prudence Co.*, 79 F.2d 77, 80 (2d Cir. 1935) ("It is well settled that the appointment of receivers for a corporation does not deprive its directors of the power to file a petition in bankruptcy."); *Struthers Furnace Co. v. Grant*, 30 F.2d 576, 577 (6th Cir. 1929) ("And the pendency of a receivership does not ordinarily prevent the filing of a voluntary petition."); *In re S &*

31.     In *Kreisers*, a judgment creditor sought the appointment of a state-court receiver over Kreisers, a wholesale medical-supply company against whom the judgment had been rendered. *Kreisers*, 112 B.R. at 997. At the hearing on the motion for a receiver, "when it became evident that Kreisers was poised to file bankruptcy if a receiver was appointed," the state court appointed a receiver and "held Kreisers lacked power to file bankruptcy since a receiver was appointed." *Id.* at 997-98. Shortly before the state-court's ruling, the company's directors met and approved a resolution authorizing the company to file a Chapter 11 petition, which was filed after the state court's appointment of the receiver (without either seeking or obtaining the state court's or the receiver's authorization to file). *Id.* at 998. There was no question that the filing of the petition "interfere[d] with the state court's injunction requiring Kreisers to act only in the ordinary course of business and interfere[d] with the receiver's possession of Kreisers' assets by restraining the receiver from action in the receivership proceeding." *Id.*

---

*S Liquor Mart, Inc.*, 52 B.R. 226, 227 (Bankr. D.R.I. 1985) (stating that "it is fundamental that a state court receivership proceeding may not operate to deny a corporate debtor access to the federal bankruptcy courts"); *In re Donaldson Ford, Inc.*, 19 B.R. 425, 430 (Bankr. N.D. Ohio 1982) ("The inability of a state or federal court to enjoin the filing of a voluntary or involuntary petition under the Bankruptcy Act derives from the Debtor's constitutional right to seek relief in the federal courts under the provisions of the Bankruptcy Act."); *In re Central Mortgage & Trust*, 50 B.R. 1010, 1021 (S.D. Tex. 1985) ("It has long been held that a corporation may not be precluded by state law from availing itself of federal bankruptcy law.); *In re Klein's Outlet*, 50 F. Supp. 557, 559 (S.D.N.Y. 1942) ("The appointment by a state court of a permanent receiver with full power to act for the corporation does not affect the right of directors to act on behalf of the corporation in federal bankruptcy proceedings."); *In re Monterrey Equities-Hillside*, 73 B.R. 749, 752 (Bankr. N.D. Cal. 1987) (holding that where state-court receiver had power to file bankruptcy, receiver still had to obtain consent of general partner before filing a voluntary petition); *In re Greater Atlanta Apartment Hunter's Guide, Inc.*, 40 B.R. 29, 31 (Bankr. N.D. Ga. 1984) ("This court holds that a state court receivership cannot operate to deny a corporate debtor access to this nation's federal Bankruptcy Courts").

32.     The question before the court in *Kreisers* was identical to the question before this Court on the Motions to Dismiss: was the company's authorization to file bankruptcy, which was granted in accordance with applicable law and the company's governing documents, rendered ineffective by the appointment of a state-court receiver before the bankruptcy was filed? The court answered that question in the negative. *Id.*

33.     The movant in *Kreisers* argued that "upon appointment of a receiver, Kreisers' officers and directors were divested of their authority and all such power vested in the receiver." *Id.* The court rejected this argument altogether, noting that neither the Court nor the movant had "unearthed any statutory or decisional law to support the contention that a state court receivership generally bars bankruptcy filing." *Id.* The court even advanced a theory about why, positing that "[p]erhaps this is so because the argument runs so blatantly against the statutory right of a debtor to the privileges of the national statute on bankruptcies and the inherent prohibition against any bar by any authority to the exercise of that right." *Id.*

34.     Just as the overwhelming authority decided before *Kreisers* supports the general principle that a state-court receivership order cannot legitimately prohibit a debtor from filing bankruptcy, numerous courts deciding the issue after *Kreisers* have come to the same conclusion. *See, e.g.*, *In re John Q. Hammons Fall 2006, LLC*, 573 B.R. 881, 897 (Bankr. D. Kan. 2017); *In re Orchards Village Invs., LLC*, 405 B.R. 341, 345-49 (Bankr. D. Ore. 2009); *Corporate & Leisure*, 351 B.R. at 731-32.[11]

---

[11] *See also In re Westlake Prop. Holdings, LLC*, 606 B.R. 772, 778 (Bankr. N.D. Ill. 2019) (explaining that "the state court could not have prevented Westlake from filing. To the extent that the injunction did prohibit the bankruptcy filing, the *Supremacy Clause* and the Bankruptcy Code

35.    In *John Q. Hammons*, the court addressed an argument similar to that made by the Movants in the Motion to Dismiss, namely that broad language regarding management rights in a prepetition state-court order prohibiting the debtors from "taking any action outside of the ordinary course of business" served as a blanket ban on the debtors filing bankruptcy protection. 573 B.R. at 896. The court acknowledged the obvious—that filing bankruptcy is an act outside the ordinary course. But the court rejected the argument by the party moving to dismiss the case that the language "actually altered who had authority to authorize the filing of a bankruptcy petition." *Id.* The court explained that "[t]he argument that one comment in a preliminary ruling could actually transfer title to property, equitable or otherwise, to change the governance of an entity is frivolous." *Id.* at 897. Thus, the court held that a state-court injunction containing language restricting certain actions by a company or its principals somehow served to abrogate the terms of a company's organizing documents regarding bankruptcy filing authority "would be contrary to 'overwhelming authority' holding otherwise." *Id.* (citing *Kreisers*).

36.    Remarkably, before these bankruptcy cases were filed, the Movants actually agreed with the foregoing legal analysis. In emails between Mitte, Milligan, and their counsels, the parties worked together to redline, draft, and comment on the proposed receivership order they planned to submit for entry. In one such redline, the parties

---

would render the injunction invalid."); *In re Auto. Prof'ls, Inc.*, 370 B.R. 161, 181 (Bankr. N.D. Ill. 2007) (stating that "a state receivership cannot preclude a debtor from seeking bankruptcy protection"); *In re Medifacts Int'l, Inc.*, No. 07-10110, 2007 Bankr. LEXIS 5093, at *3 (Bankr. D. Del. Feb. 8, 2007) (opining that "a state court would not have any authority to enjoin the filing of a petition."). *In re Newport Offshore*, 219 B.R. 341, 355 (Bankr. D.R.I. 1998) ("No one disputes that a state court receivership could never interfere with interested parties' ability to initiate bankruptcy proceedings, which would then supercede [sic] the receivership. Nor could they.").

specifically discussed the unenforceability of the provision they now argue stripped the authority of the General Partners to commence these cases:



37.     As shown above, counsel's comment to the anti-bankruptcy provision notes: "This is not enforceable. You cannot deny another party who has the right to seek protection of the bankruptcy court the ability to file for protection." Milligan replied "Include even though we don't think it's enforceable?," and Mitte's counsel's responded: "Sure."[12]

> **4.   The state-court Receivership Order entered before the petition date did not divest the General Partners of their power to authorize the filing of the LP Debtors' petitions for relief.**

38.     In this case, the general partners were not "removed" from their positions when the receiver was appointed to temporarily manage the partnerships. While the

---

[12] *See* Redline of Receivership Order attached to LP Debtors' Response to the Motion to Expedite [Docket No. 14, at p. 64].

Receivership Order does purport to restrict certain actions of the general and limited partners, those restraints on actions did not *displace* the partners from their ownership under the Partnership Agreements. Moreover, the Receivership Order expressly acknowledges the continued existence of the General Partners as general partners of the Partnerships, specifically bestowing the General Partners with certain ongoing rights, notwithstanding Milligan's appointment: "*the general partners* of each of the Partnerships shall retain the exclusive right to prosecute and defend the claims of the Partnerships in the arbitration or this suit." (Receivership Order ¶5) (emphasis added). There are no provisions in the Receivership Order that remove the General Partners, nor transfer the ownership interest of the General Partners to Milligan. The Receivership Order expressly did not grant receivership over the General Partners. As a result, the General Partners' legal status as general partners remained undisturbed by the Receivership Order, and the attending authorization to file the LP Debtor's petitions for relief remained effective. The Receivership Order did not—and could not—prevent the duly authorized filing of the LP Debtor's petitions by the General Partners.

39.     As the great majority of cases discussed above make clear, a state court receivership order—even one that purports to vest the receiver with *exclusive* authority to file a bankruptcy case, is not enforceable to prevent a debtor from exercising its right to access the federal courts to avail itself of the bankruptcy rights and responsibilities Congress has made available. In this case, the constitutional and public-policy considerations that undergird *Kreisers*, and the many other cases employing similar reasoning, are even stronger than in those cases.

40.     Given the General Partners remained general partners under the Partnership Agreements and state law, and state law controls who has the authority to file a federal bankruptcy petition, the state-court Receivership Order could not have abrogated the partnerships' federal right to seek bankruptcy protection through a duly authorized filing by the General Partners, as a matter of law. In this Response, the LP Debtors cite a plethora of cases in support of the proposition that pre-petition state-court receivership orders cannot abrogate the terms of a company's operating agreement empowering authorized persons to file bankruptcy petitions. The Movants, on the other hand, cite only a few cases in support of their assertion that the state-court receiver had exclusive authority to file bankruptcy petitions on behalf of the LP Debtors. The Movants' cases are inapposite, but to the extent any of them attempts to address these issues, the Court can safely disregard as neither controlling nor persuasive authority.

### 5.     Movants' cited authorities are inapposite.

41.     The Movants' half-hearted arguments in their motions to dismiss "run . . . blatantly against the statutory right of a debtor to the privileges of the national statute on bankruptcies and the inherent prohibition against any bar by another authority to the exercise of that right." *In re Kreisers*, 112 B.R. at 998. (citing *Jordan v. Independent Energy Corp.*, 466 F. Supp. 516, 525-30 (N.D. Tex. 1978); *Matter of Greater Atlanta Apartment Hunter's Guide, Inc.*, 40 Bankr. 29, 31 (Bankr. N.D. Ga. 1984).

42.     The Movants principally rely on *Chitex Comm. v. Kramer*, 168 B.R. 587, 590 (S.D. Tex. 1994); *In re Statepark Bldg. Group, Ltd*., 316 B.R. 466, 471 (Bankr. N.D. Tex. 2004); *El Torero Licores v. Raile (In re El Torero Licores)*, 2013 WL 6834609 (C.D. Cal. Dec. 20, 2013);

and *Kreit v. Quinn (In re Cleveland Imaging & Surgical Hosp., LLC)*, 690 Fed. Appx. 283, 286 (5th Cir. 2017). But these cases merely affirm the anodyne proposition that a state-court receivership order can empower a receiver with the authority to file a bankruptcy petition. The LP Debtors do not dispute that Milligan, under the Receivership Order, could have authorized bankruptcy filings on behalf of the partnerships.

43.     The Movants' cases are also distinguishable on their facts. For example, the Movants cite to *Chitex*. But that case specifically holds that only when the **ownership** of a company is completely divested and transferred to the receiver, then the receiver (and not the prior owners) has the sole authority to commence a bankruptcy case. In *Chitex*, a corporation was placed into receivership under an order that "divested [...] all legal right, title, and ownership of the stock of the Texas corporation known as Chitex Communications, Inc., including all voting and other rights related thereto." *Chitex*, 168 B.R. at 588. Further, Donovan, the president who filed the bankruptcy in *Chitex*, was a **nonshareholder** president, and so he retained no ownership after the receivership order was entered. In dismissing the bankruptcy case, the court explained that "this Court finds that all **ownership** of Chitex stock and all powers of management were vested in the appointed receiver as of August 27, 1993. Thus, Donovan had no authority to file a Chapter 11 petition on behalf of Chitex six weeks later." *Id.* at 591 (emphasis added).[13] Here, the

---

[13] Other courts have acknowledged this point when analyzing the *Chitex* case. "Although the receiver had no more authority or power than Donovan did before the divorce decree, he did acquire Donovan's entire interest in *Chitex*. Cox*, 575 S.W.2d at 664; *see also Salgo*, 497 S.W.2d at 630 (stating that in an action arising out of a proxy contest, "the shares are 'held by' the receiver to the same extent that legal title would be held by the corporate stockholder in the absence of a receivership. Therefore, only Fischer had the authority to place Chitex into bankruptcy.").

Receivership order did not divest or transfer ownership of either the partnerships nor of the general partners to the receiver. The General Partners continue to own their 1.0% interest in their respective partnerships, and there is no receivership over the General Partners. Therefore, the *Chitex* test fails.

44.     Likewise, *Statepark Building Group* is inapposite. That case was decided under the now-abrogated Texas Uniform Partnership Act and involved a partnership that had been officially dissolved.

45.     The *El Torero Licores* case also is not on point. In that unpublished case from California, the court held that to prove sole authority to file a Chapter 11 petition, a receiver must show that the receivership order expressly provides the receiver with sole authority to file for Chapter 11; *and* expressly revokes the petitioner's authority to file. *See In re Licores*, No. SA 13-10578-MW, 2013 WL 6834609, at *3. Here, Milligan's state-court receivership order fails this two-part test, but even if it satisfied the test laid out in *Licores*, the analytical framework of that case is a decidedly minority view, and the Court can justifiably ignore it.

46.     Finally, nothing in the *Cleveland Imaging* case suggests that granting a receiver authority to file bankruptcy also automatically divests that authority from the General Partners. *Cleveland Imaging* merely holds that a bankruptcy ***filed by a receiver*** under a receivership order granting that receiver the power to file bankruptcy on behalf of the entity in receivership will be upheld. Movants do not dispute that Milligan also had authority to file bankruptcy for the LP Debtors, but in any event, that issue is not before this Court.

## IV.  CONCLUSION

A state-court receivership order may grant a receiver authority to file a bankruptcy case. But to the extent that such an order purports to make that authority exclusive—and divest an owner and manager of the powers granted it under the entity's governing documents executed in accordance with applicable state law—such provisions are not enforceable. In this case, before and after the Receivership Order was entered, the General Partners had the power under the TBOC and the express terms of the Partnership Agreement to authorize the filings of Chapter 11 petitions on behalf of the partnerships. Any language in the Receivership Order purporting to nullify that power is itself a legal nullity. The filings were duly authorized. Accordingly, the Court should not dismiss the LP Debtors' Chapter 11 cases.

**Dated: August 24, 2020**

Respectfully submitted,

**FISHMAN JACKSON RONQUILLO PLLC**

<u>/s/ Mark H. Ralston</u>
Mark H. Ralston
State Bar No. 16489460
Fishman Jackson Ronquillo PLLC
Three Galleria Tower
13155 Noel Road, Suite 700
Dallas, TX 75240
Telephone: (972) 419-5544
Facsimile: (972) 4419-5500
E-mail: mralston@fjrpllc.com

**PROPOSED COUNSEL FOR THE DEBTORS**

## **CERTIFICATE OF SERVICE**

I hereby certify that on August 24,  2020, I caused to be served a true and correct copy of the foregoing document by the court ECF filing system on all parties who have entered their appearance electronically.

 _/s/ Mark Ralston_
Mark Ralston