IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| WC 1st AND TRINITY LP | § | CASE NO. 20-10885 |
| | § | |
| WC 3RD AND CONGRESS LP | § | CASE NO. 20-10887 |
| | § | |
| WC 1st AND TRINITY GP LLC | § | CASE NO. 20-10886 |
| | § | |
| WC 3RD AND CONGRESS GP LLC | § | CASE NO. 20-10888 |
| | § | |
| **Debtors** | § | |

**DEBTORS' RESPONSE TO RECEIVER'S
STATUS REPORT REGARDING DISCOVERY**

**I.    INTRODUCTION**

Debtors WC 1st and Trinity, LP and WC 3rd and Congress, LP (collectively, the "**LP Debtors**" or the "**Debtors**") [1] hereby submit this Response to Receiver's[2] Status Report Regarding Discovery,[3] and Report on the Deposition of Barbara Lee by the Mitte

---

[1] To the extent the Court deems it to be necessary, this Response may be considered to be filed on behalf of WC 1st and Trinity GP, LLC and WC 3rd and Congress GP, LLC (the "**GP Debtors**"). It should be noted, however, that the Receivership was in place only with regard to the limited partnerships (as defined, the "Debtors" above).

[2] " Receiver" refers to Gregory S. Milligan, of the firm HMP Advisory Holdings, dba Harney Partners, in his capacity as state court receiver pursuant to the "Order Appointing Receiver" entered on December 10, 2019 in CAUSE No D-1-GN-18-007636 in Travis County District Court over WC 1st and Trinity, LP and WC 3rd and Congress, LP only.

[3] ECF 26 (20-10885); ECF 28 (20-10887).

1

Foundation[4] in accordance with the Court's request at the August 18, 2020[5] status conference.[6] [7]

## II. ARGUMENT AND FACTS

### A. RESOLUTION AND COMPLIANCE WITH THE COURT'S DISCOVERY ORDERS

1. This Court ordered the Debtors to (a) provide unfettered access to the Debtors' records on the accounting system and (b) produce Barbara Lee for deposition, which occurred on August 17, 2020.

2. With respect to the access to the Debtors' financial records, the Debtors have provided unfettered electronic access to the Debtor information in Yardi, including information about all transactions of the Debtor, as required by the state court and as ordered by this Court. As is set forth in the motion for reconsideration, the Debtors could not and did not provide access to non-debtor information stored on that system. Further, as is set forth in greater detail below, the Debtors respectfully inform this Court that in addition to the electronic software access referenced above, the Debtors have also provided: (i) the full general ledgers of the Debtors since the 2012 inception of the partnerships, (ii) all bank records for the Debtors since inception (with the exception of accounts closed prior to 2017 which records Debtors no longer have, but which information

---

[4] ECF 25 (20-10885); ECF 27 (20-10887).

[5] ECF 19 (20-10885); ECF 26 (20-10887).

[6] "I'm going to let you file something by next Tuesday . . . responding to the receiver's report. Obviously you could moot a great deal of this by granting them access and letting them into the system. That would take a lot of it. Obviously the description that they gave of the deposition is concerning but I don't – again, I can watch the deposition and I can decide for myself whether there was obstructionist behavior or just careful lawyering. So we'll let that roll on when it comes." 8/22/2020 Tr. at 9-17.

[7] This Response is provided subject to the *Motions for Reconsideration* filed on August 21, 2020 on behalf of all captioned debtors above. ECF 39 (20-10885); ECF 28 (20-10886); ECF 36 (20-10887); ECF 28 (20-10888).

2

is reflected in the general ledgers and Yardi access), (iii) all available records of invoices received for the partnerships since inception in 2012, and (iv) a full detailed reconciliation of all advances, transfers and payments between the LP Debtors and GP Debtors since inception, which reconciliation shows that the LP Debtors currently owe the GP Debtors in excess of $2.3 million, a claim that can be challenged or adjudicated in the bankruptcy claims process before this Court. Finally, the Debtors have thrice made Barbara Lee available to answer any questions that the parties had about any partnership business or finances. Simply put, there is nothing more for the Debtors to provide.

3. With respect to Milligan's report on the Barbara Lee deposition, the Debtors understand that the Court instructed it would review an expedited transcript and video recording of the deposition and make its own determination as to Milligan's complaints about the deposition. Accordingly, the Debtors will refrain from response to the receiver's allegations. To that end, counsel for the receiver has submitted the deposition transcript and video recordings of deposition to the Court.[8]

4. The receiver has also brought before this court a chart of information that he asserts was not provided in the course of the state court litigation. Per the Court's instruction, the Debtors have added updated, and corrected notes regarding the status of same, as set forth below:

---

[8] The Debtors respectfully note that (i) Ms. Lee has testified three times before Milligan and Mitte (two depositions and one court appearance) largely on the same subject matter, and this time for seven hours; (ii) Ms. Lee answered truthfully and to the best of personal knowledge; (iii) Ms. Lee maintained a professional disposition during the entirety of her testimony, even when counsel for the Receivership Parties abused the process by making inappropriate sidebar remarks, delving into details about of her family, including her husband's employment, and retreading ground that had been tirelessly covered multiple times in this deposition and the earlier one; and (iv) all of the objections made by counsel present were done so in good faith.

| *Category* | *Status* | *Receiver's Comments* | *Debtor's Comments* |
|---|---|---|---|
| Yardi Accounting System ✓ | ~~No Compliance~~ <br><br> Complied | 1. Debtors refused to comply until they could "rebook" entries. | 1. Neither Ms. Lee, nor the Debtors, ever indicated a refusal to comply; Ms. Lee did however explain that the entries for the two relevant partnerships would be accessible to the Milligan login and also testified she had been working with Yardi since the court's order in order to be able to comply. No entries were "rebooked," insofar as no changes were made to information pertaining to the Debtors. In any event, access has been supplied and this point is moot.[9] |
| Certification of Production ✓ | Resolved | 2. Ms. Lee testified that she had not personally verified that all documents were provided to the Receiver and that she did not personally compile all of the documents. When asked who drafted the certification and who instructed her to sign the certification, she said she did not remember. | 2. The certification, as are most pleadings, was drafted by outside counsel and Ms. Lee was consulted during the entire process; Ms. Lee, however, would not be able to ensure compliance with the order requiring the certification, thus, counsel's role. |
| Emails ✓ | ~~Partial Compliance~~ <br> Resolved | 3. Ms. Lee swore that everything was produced, but then testified that she was just told that by someone she cannot remember. | 3. See answer above;<br><br>4. Emails regarding refinance addressed in items 11 and 12 below; |

---

[9] Additionally, Motions for Reconsideration were filed on August 21, 2020 on behalf of all captioned debtors above, and those issues have not yet been decided by this Court. Debtors also intend to reply to Lemmon's response to the Motion for Reconsideration as well. ECF 40 (20-10885); ECF 29 (20-10886); ECF 37 (20-10887); ECF 29 (20-10888).

| *Category* | *Status* | *Receiver's Comments* | *Debtor's Comments* |
|---|---|---|---|
| | | 4. For instance, no emails regarding known efforts to refinance the properties were produced.<br>5. Similarly, offers by third parties to purchase were not produced. | 5. Offers by third parties to purchase the partnership properties were produced on numerous occasions, in the state court proceedings, and in the arbitration proceedings; accordingly, this statement is categorically false. |
| Liabilities of Partnerships | ~~Partial Compliance~~<br><span style="color:red">Resolved</span><br><br>✓ | 6. Ms. Lee instructed not to answer;<br>7. Some information provided in state court, but some known liabilities not listed;<br>8. Some underlying invoices for known charges not produced. | 6. 6. As phrased, the answer to this question would implicate disclosure of privileged communications as well as an expert opinion requiring consideration of the valuation of the real estate assets.<br>7. This statement is too vague to respond to; however, receiver has specifically complained about certain legal expenses which are addressed in 20 below.<br>8. See #2 above. |
| Contracts, Leases | ~~Partial Compliance~~<br><span style="color:red">Complied</span><br><br>✓ | 9. Some produced but Debtors claim their hard drive was seized by FBI and not returned.<br>10. For instance, no management agreement produced. | 9. Contrary to Receiver's assertions, the shared drive has not been active since August 14th, 2019 and is not currently in the possession of Debtors or its affiliates.<br>10. Management fee expenses are specifically outlined in the limited partnership agreements, which the receiver has |
| Refinance Discussions | ~~No Compliance~~<br><span style="color:red">Resolved</span><br><br>✓ | 11. World Class has approached multiple lenders regarding refinance or restructure of these Partnership debtors.<br><br>12. No documents have been produced, other than a forbearance agreement with the lender for Congress LP. | 11. The Debtors have not approached lenders to refinance the partnership debt. The communications that Milligan refers to may refer to a non-debtor's exploration of available financing assuming a potential settlement of the state court litigation, which would not have involved the partnership or partnership debt. |

5

| *Category* | *Status* | *Receiver's Comments* | *Debtor's Comments* |
|---|---|---|---|
| | | | 12. Forbearance agreement with lender for Congress LP has been produced. |
| Insurance Information ✓ | Complied | N/A | N/A |
| Bank Accounts ✓ | ~~Partial Compliance~~ Complied | 13. Other bank accounts are revealed in the ledgers.<br>14. Ms. Lee testified that she could not tell from the production what those accounts were.<br>15. Without Yardi access, those accounts cannot be properly identified and examined.<br>16. The Receiver obtained the records for one bank account for each Partnership directly from Wells Fargo. To date, the Partnerships have only provided records for the year 2020 for those same accounts.<br>17. In reviewing the general ledgers provided by the Partnerships, the Receiver identified at least two additional accounts for Trinity LP and at least one additional account for Congress LP. Ms. Lee acknowledged that these accounts existed (but have been closed). However, no records for these accounts were provided. | 13. Ms. Lee testified that documents related to<br>14. bank records closed prior to 2017 are not in Debtors' possession, though the information regarding those accounts is contained in the Yardi access provided. All other bank statements have been provided.<br>15. Yardi access has been provided.<br>16. Milligan has the full bank records since inception that he received directly from Wells Fargo. There is nothing outstanding with respect to this item.<br>17. See answer directly above to 13-14. |

| *Category* | *Status* | *Receiver's Comments* | *Debtor's Comments* |
|---|---|---|---|
| Management Agreement ✓ | Complied | 18. Ms. Lee testified that a World Class entity is paid a monthly fee for property management, clerical, and accounting services pursuant to a Management Agreement with the Partnerships. This agreement has not been provided to the Receiver. | 18. Allowance for these expenses is specifically outlined in the applicable Limited Partnership Agreements, which are the operative and governing documents, and which the Receiver has. |
| April 2020 Assignments of Partnership Interests ✓ | Complied | 19. In the course of the state-court litigation, the Receiver learned that the Nate Paul-owned entities holding the majority of partnership interests in the Partnerships transferred and assigned those interests to two newly formed entities. No information regarding these assignments were turned over the Receiver. | 19. This assignment documentation was provided to the Receivership Parties on August 4, 2020. |
| Attorneys' Fees Information ✓ | Complied unless Receiver identifies need for duplicative information | 20. Retention agreements and invoices for five of the now 12 law firms representing the Partnerships were included in the documents provided to the Receiver. However, no information for Munsch Hardt, which asserts it has never been paid for its services to the Partnerships, was included. | 20. Upon the receiver's question regarding outstanding invoices to Munsch Hardt (MH), the Debtors reached out to the law firm to confirm if any bills were outstanding. Only one week ago did the parties confirm that the bills remained outstanding, and prior to that time, both MH and Debtors had thought the relevant billing had not been issued. This information can be supplemented; however, it appears the Receiver has this information. The Debtors could not previously have directly requested this information from MH due to |

7

| *Category* | *Status* | *Receiver's Comments* | *Debtor's Comments* |
|---|---|---|---|
| | | | the restrictions in place under the receivership order. |
| Emails ✓ | Repeat of Previous Category Above Resolved | 21. Very few emails were turned over to the Receiver. Those that were provided were scanned pdfs rather than searchable .msg or .pst files.<br>22. Ms. Lee testified that she searched her emails (but could not remember the search terms she used) and provided them to in-house counsel in native format. It does not appear that all of the emails Ms. Lee compiled were produced.<br>23. Ms. Lee also testified that she was told that all emails were produced, but she did not independently verify that, even though she filed a sworn statement to that effect. When asked who told her that everything was produced, she could not recall. | 21. It is unclear what the definition of "very few" is; as thousands of pages of email communications were provided. Further, the emails were produced to the receiver via outside counsel' vendor prepared the production.<br>22. All relevant non-privileged emails were produced from what Ms. Lee provided.<br>23. This is a complete mischaracterization of Ms. Lee's statement. Again, Ms. Lee swore compliance with the Receivership Order which required the production of certain partnership documents. above. She did not certify compliance with document requests propounded by Mitte. |
| Intercompany Payables/Receivables ✓ | Complied | 24. The general ledgers for the Partnerships show approximately $37 million in intercompany transactions. However, virtually no documentation supporting those intercompany transactions was provided, but allegedly is available in Yardi. | 24. This comment is patently false. The full general ledgers of the Debtors since the 2012 inception of the partnerships, all bank records for the Debtors since inception (with the exception of accounts closed prior to 2017 which records Debtors no longer have, but which information is |

8

| Category | Status | Receiver's Comments | Debtor's Comments |
|---|---|---|---|
| | | | reflected in the general ledgers and Yardi access), all records of invoice received for the partnerships since inception in 2012, and a full detailed reconciliation of all advances, transfers and payments between the LP Debtors and GP Debtors since inception. In addition, Yardi access has been provided. |
| Texas Comptroller Information ✓ | Complied | 25. Even though the Texas Comptroller seized more than $260,000 from the Partnerships' bank accounts, no information regarding this was included in the documents provided.<br><br>26. Ms. Lee testified that the levy resulted from the 2019 Combined Texas Franchise Tax Report for multiple World Class entities, but such report was not produced. The notices of liens or account levies were likewise not produced. | 25. Ms. Lee testified that she did not have or had<br>26. not received notices of liens from the comptroller's office other than the bank account information, which was provided. |
| Shared File (S: drive) ✓ | Complied | 27. Ms. Lee testified World Class utilized a "shared file" where they kept certain partnership documents. She alleges the share file was seized by the FBI in August 2019, and World Class no longer has access to it. This is not | 27. Contrary to Receiver's assertions, the shared drive has not been active since August 14th, 2019 and is not currently in the possession of Debtors or its affiliates.<br><br>28. The appropriateness of deposition objections will be determined by this Court. |

| Category | Status | Receiver's Comments | Debtor's Comments |
|---|---|---|---|
| | | in keeping with federal criminal procedure.<br>28. Lee was instructed not to answer who the company's lawyer was working on this.<br>29. Communications with United Heritage Credit Union (secured lender for Trinity LP) about additional lending in support of the supersedeas bond the Partnerships were unable to post.<br><br>30. Communications with Nalle (Congress LP secured lender) regarding a forbearance agreement that was allegedly executed in the Spring of 2020. | 29. These discussions were primarily oral and UHCU declined to provide additional lending support to the partnership due to the receivership.<br><br>30. These discussions were primarily oral and Debtors have produced the forbearance agreement. |

B. **ADDITIONAL BACKGROUND INFORMATION FOR THE COURT REGARDING PRE-PETITION DISCOVERY ISSUES**

5. Given the wide-ranging allegations and mischaracterizations in the receiver's report, the Debtors find it necessary to provide this Court with additional information regarding pre-petition discovery.

6. The Receivership Parties have set forth, in numerous proceedings and multiple forums, that the Partnerships have frustrated or hindered the receiver's discovery. In reality, what the receiver characterizes as hinderance was the Debtors seeking necessary relief from the district court on multiple occasions through appeals and mandamus, and exercising their appropriate legal rights. Despite the receiver's mischaracterization, there is nothing nefarious about appropriately exercising the legal process necessary to protect one's rights.

7. Further, what is notably missing from the receiver's and Mitte's reports is transparency to this Court about outstanding discovery by the Receivership Parties, which the Debtors reserve the right to seek at the appropriate time in these bankruptcy proceedings as may be necessary or relevant.

C. **RECEIVER'S REFUSAL TO PROVIDE TRANSPARENCY OF HIS COMMUNICATIONS AND ACTIVITIES AS A "NEUTRAL FIDUCIARY"**

8. On November 25, 2019, prior to the hearing on the Mitte's Application for a Receiver in district court, suspecting collusion and non-neutrality between Milligan and Mitte, the Debtors issued a Hearing Subpoena Duces Tecum to Greg Milligan seeking all documents or communications exchanged between the Receiver and Mitte (and their

11

respective agents), and all documents or communication obtained since the appointment in the arbitration. Documents responsive to this request were produced to Debtors on the morning of the hearing, and contained email correspondence from Mitte's counsel specifically instructing Milligan not to produce the requested documents to the Debtors until the last possible moment, a request with which Milligan complied.

9. The documents reveal hundreds of communications that show that the Receivership Parties had been colluding and working together since August 2019, if not before, scheming to effectuate a sale of the Debtors' assets through receivership.

10. Over the next months, the Debtors had to file additional subpoenas duces tecum to obtain the same categories communications covering the period from December 2019 to present, but the Receiver has continually refused to provide all communications between the Receivership Parties, and any agents or each other. This remains very concerning to Debtors as there is no legal or other basis for such non-privileged communications to be withheld, and furthermore, for them to be withheld by a party who has a court-ordered obligation to conduct himself with neutrality and transparency. The Debtors reserve the right to seek this discovery as may be necessary or applicable in these bankruptcy proceedings.

    D.    **MITTE'S OUTSTANDING DISCOVERY DEFAULTS**

11. The Foundation was served with discovery requests in the Arbitration Proceeding in May of 2019. Despite the identification of missing documents by Debtors'

counsel, on numerous occasions, the Foundation has insisted that it has completed its production.[10]

12. On November 6, 2019, the Third Court of Appeals stayed the Arbitration Receivership in its entirety. On November 20, 2019, in compliance with the Third Court of Appeals' decision, the Arbitrator stayed the Arbitration Receivership.[11] The arbitration proceeding in its entirety was then effectively abated until May of 2020 pending the parties' disputes in district court and the Court of Appeals. Despite this, on or around May 2020 the Foundation sought enforcement of an October 2019 stale discovery order in the district court.

13. In May 2020, having realized the staleness of the underlying arbitration proceedings ordered the parties to amend and restate their arbitration claims, and propose an new scheduling order based upon these new or amended claims, which such order would also address outstanding or new discovery requested by the parties.[12] In an effort to preserve its right to responsive documents, and due to the Foundation's insistence upon enforcing a stale order in an inappropriate forum, Debtors were forced to file a Motion to

---

[10] For example, despite repeated requests for disclosure of their governing policies, Debtors are not aware who currently holds the decision making power within the Foundation, and have been told that the present litigation is primarily spearheaded by counsel, Ray Chester, who notably has also refused to disclose his fee arrangements with the Foundation, despite multiple discovery requests for the same.

[11] This stay, as well as the later stay entered by the Third Court of Appeals on December 19, 2019, was enforced in the Arbitration Proceedings until May 29, 2020.

[12] Specifically, Claimants and Respondents were to submit proposed drafted by the end of July, and with additional time for replies, the Arbitrator would have set the new schedule sometime in mid-August.

Compel in the arbitration; to date, the Foundation has neither responded to that motion, nor supplemented its production.[13]

14. Further, the Foundation has yet to produce a corporate representative witness despite having been served a deposition notice for such on October 3, 2019. Indeed, Debtors identified specific categories for such testimony, and the Foundation never objected to those categories. Instead, the Foundation asserted that it would refuse to produce witnesses for deposition until the Partnerships had completed the document production in the Arbitration Proceeding. Obviously, no rule or authority was cited for this argument because none exists.

15. The fact remains that the Foundation has been recalcitrant in response to the Debtors' discovery requests, <u>and</u>, no witness has given any deposition testimony on behalf of the Foundation, despite numerous reasonable requests. The Debtors reserve the right to seek this discovery as may be necessary or applicable in these bankruptcy proceedings.

## III. CONCLUSION

16. The Debtors respectfully submit this Response to Receiver's Status Report Regarding Discovery, and Report on the Deposition of Barbara Lee by the Mitte Foundation in accordance with the Court's request at the August 18, 2020 status conference response

---

[13] Indeed, Debtors were forced to reserve the right to amend (or seek leave to amend) in the future due to the Foundation's failure to fully comply with its discovery obligations, in the likely event new information came to light when those obligations were met. Further, as the Foundation has failed to disclose its governing documents, Debtors had to reserve the right to add additional parties that may be liable for the breaches or actions described herein.

to the receiver's discovery status report. Accordingly, Debtors request confirmation compliance has been finalized, and thus, no further discovery issues remain before this Court.

**Dated: August 25, 2020**

Respectfully submitted,

**FISHMAN JACKSON RONQUILLO PLLC**

/s/ Mark H. Ralston
Mark H. Ralston
State Bar No. 16489460
Fishman Jackson Ronquillo PLLC
Three Galleria Tower
13155 Noel Road, Suite 700
Dallas, TX 75240
Telephone: (972) 419-5544
Facsimile: (972) 4419-5500
E-mail: mralston@fjrpllc.com

**PROPOSED COUNSEL FOR THE DEBTORS**

## CERTIFICATE OF SERVICE

This is to certify that the undersigned caused a true and correct copy of the foregoing document to be served on all persons receiving electronic notice of filings in this case through the ECF system, on this, the 25th day of August 2020.

                                              /s/ Mark H. Ralston
                                              Mark H. Ralston